**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN THE MATTER OF: ROBERT S.
BLENDHEIM AND DARLENE G.
BLENDHEIM,

*Debtor*,

HSBC BANK USA, National
Association, as Indenture Trustee of
the Fieldstone Mortgage Investment
Trust, Series 2006-1,
*Appellant/Cross-Appellee*,

v.

ROBERT S. BLENDHEIM; DARLENE G.
BLENDHEIM,
*Appellees/Cross-Appellant*.

Nos. 13-35354
13-35412

D.C. No.
2:11-cv-02004-
MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted
October 7, 2014—Seattle, Washington

Filed October 1, 2015

Before: Richard A. Paez, Jay S. Bybee,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Bybee

# SUMMARY[*]

## Bankruptcy

Affirming in part and vacating in part the district court's judgment, the panel held that an amendment to the Bankruptcy Code—barring debtors from receiving a discharge at the conclusion of their Chapter 13 reorganization if they received a Chapter 7 discharge within four years of filing for Chapter 13 relief—does not render such "Chapter 20" debtors ineligible for Chapter 13's lien-voidance mechanism, which allows a debtor to void or modify certain creditor liens on the debtor's property, permanently barring the creditor from foreclosing on that property.

The panel held that the bankruptcy court properly voided a creditor's lien under § 506(d) of the Bankruptcy Code. The panel held that under § 506(d), if a creditor's claim has not been "allowed" in the bankruptcy proceeding, then a lien securing the claim is void.

The panel held that the voiding of the creditor's lien was permanent such that the lien would not be resurrected upon the completion of the debtors' Chapter 13 plan. Agreeing with the Fourth and Eleventh Circuits, the panel held that 11 U.S.C. § 1328(f), enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005, did not render Chapter 20 debtors ineligible to void liens permanently

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

upon the completion of their Chapter 13 plans. The panel concluded that a discharge is not necessary to close a Chapter 13 case, and lien voidance does not subvert Congress's intent in enacting BAPCPA.

The panel held that the voiding of the lien comported with due process because the creditor received notice that its rights might be affected when the debtors objected to its proof of claim.

The panel held that under the totality of the circumstances, the bankruptcy court did not clearly err in concluding that the Chapter 13 petition was filed in good faith. Agreeing with the Eleventh Circuit, the panel rejected a per se rule prohibiting a debtor from seeking the benefits of Chapter 13 reorganization during the post-discharge period when his Chapter 7 case remains open and pending. The panel affirmed the bankruptcy court's lien-voidance order, plan confirmation order, and plan implementation order.

Vacating the district court's denial of attorneys' fees, the panel held that the district court lacked jurisdiction to determine whether the debtors were entitled to attorneys' fees because this issue was not addressed, in the first instance, by the bankruptcy court.

---

## COUNSEL

Christopher M. Alston (argued) and W. Adam Coady, Foster Pepper PLLC, Seattle, Washington, for Appellant/Cross-Appellee.

Taryn M. Darling Hill (argued) and David F. Betz, Impact Law Group, Seattle, Washington, for Appellees/Cross-Appellants.

**OPINION**

BYBEE, Circuit Judge:

Robert and Darlene Blendheim are colloquially known as "Chapter 20" debtors. Like many others who sought bankruptcy relief during the housing crisis, they took advantage of the bankruptcy tools available under Chapter 7 and then filed for Chapter 13 relief. One of the tools available in a Chapter 13 reorganization is lien voidance, or "lien stripping." Ordinarily, the Bankruptcy Code permits Chapter 13 debtors to void or modify certain creditor liens on the debtor's property, permanently barring the creditor from foreclosing on that property. However, a 2005 amendment to the Bankruptcy Code bars Chapter 20 debtors from receiving a discharge at the conclusion of their Chapter 13 reorganization if they received a Chapter 7 discharge within four years of filing for Chapter 13 relief. 11 U.S.C. § 1328(f).

In this case, we are tasked with deciding whether by making Chapter 20 debtors like the Blendheims ineligible for a discharge, Congress also rendered them ineligible for Chapter 13's lien-voidance mechanism. This question has divided bankruptcy courts in our circuit and divided bankruptcy courts, bankruptcy appellate panels, district courts, and courts of appeals throughout the country. The bankruptcy court below concluded that HSBC's lien on the Blendheims' home would be void upon the successful

completion of their Chapter 13 plan, and the district court affirmed. We agree with the district court's conclusion that discharge ineligibility does not prohibit the Blendheims from taking advantage of the lien-voidance tools available in a typical Chapter 13 proceeding, and therefore affirm.

## I. BANKRUPTCY PROCEEDINGS

### A. Claim Disallowance and Lien Voidance

In 2007, Robert and Darlene Blendheim filed for bankruptcy under Chapter 7 of the Bankruptcy Code. The Blendheims eventually received a discharge of their unsecured debts in 2009. The day after receiving the discharge in their Chapter 7 case, the Blendheims filed a second bankruptcy petition under Chapter 13 to restructure debts relating to their primary residence, a condominium in West Seattle. In their schedule, the Blendheims listed their condo at a value of $450,000, subject to two liens: a first-position lien securing a debt of $347,900 owed to HSBC Bank USA, N.A., and a second-position lien securing a debt of $90,474 owed to HSBC Mortgage Services. The first-position lien is the only interest at issue in this appeal.

The first-position lien holder ("HSBC"), represented in bankruptcy proceedings by its servicing agent, filed a proof of claim in the Chapter 13 proceeding seeking allowance of its claim, which authorizes a creditor to participate in the bankruptcy process and receive distribution payments from the estate. The Blendheims filed an objection to the claim on the basis that, although HSBC properly attached a copy of the relevant deed of trust to its proof of claim, HSBC failed to

attach a copy of the promissory note.[1]  The Blendheims also alleged that a copy of the promissory note they had previously received appeared to bear a forged signature.  For reasons unknown, HSBC never responded to the Blendheims' objection to its proof of claim.  The deadline for responding passed, and in November 2009, hearing no objection from HSBC, the bankruptcy judge entered an order disallowing HSBC's claim.  Even after the Blendheims served HSBC and its counsel with a copy of the disallowance order, HSBC took no action in response.  Instead, it withdrew its pending motion and requested no future electronic notifications from the court.

In April 2010, the Blendheims filed an adversary proceeding complaint seeking, among other things, to void HSBC's first-position lien pursuant to 11 U.S.C. § 506(d), which states that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."  The Blendheims contended that because HSBC's claim had been disallowed, its lien secured a claim that is "not an allowed secured claim" and thus the lien could be voided.  The bankruptcy court held a hearing the following month, specifically advising HSBC to take action to address the disallowance order.  Voidance of the lien posed a more drastic consequence than simple disallowance of HSBC's claim in the bankruptcy proceeding:  voiding the lien would eliminate HSBC's state-law right of foreclosure.

---

[1] The Blendheims objected pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure, which requires that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim."  Fed. R. Bankr. P. 3001(c)(1).

Even though the threat of voidance loomed, a year passed, and still HSBC took no action to set aside the order. Once more, the court advised HSBC to file a motion to set aside the disallowance order. This time, almost a year and a half after the disallowance order was entered, HSBC responded. In April 2011, HSBC filed a motion for reconsideration of the disallowance order, alleging grounds of mistake, inadvertence, surprise, excusable neglect, due process violations, and inadequate service. Following a hearing, the bankruptcy court denied the motion. The court explained that HSBC presented "no argument or evidence as to why its failure to respond was due to mistake, inadvertence, surprise, or excusable neglect," and "[HSBC] has not provided any rationale for waiting nearly 18 months after entry of the [disallowance] order to request reconsideration." It therefore declined to set aside the disallowance order.

The Blendheims subsequently moved for summary judgment, once again seeking lien voidance. HSBC filed a response, arguing that it would be improper and inequitable to void the lien after the claim was disallowed for mere failure to respond. In support of its argument, HSBC pointed to a Seventh Circuit case called *In re Tarnow*, 749 F.2d 464 (7th Cir. 1984), which had similarly dealt with the voidance of liens under § 506(d). As HSBC explained, there, the Seventh Circuit declined to permit a court to void a lien under § 506(d) where the creditor's claim had been disallowed for untimely filing. The court concluded that because a secured creditor is not required to file a proof of claim at all, and may instead look to its lien for satisfaction of the debt, destruction of a lien under § 506(d) is a "disproportionately severe sanction" for an untimely filed claim. HSBC argued that destruction is equally inappropriate in the case of simple default.

The bankruptcy court held a hearing and offered an oral ruling at the conclusion of argument.  The bankruptcy court acknowledged that voiding HSBC's lien under § 506(d) "based on a default gives the Court pause."  However, the court explained, the text of § 506(d) seemed clearly to contradict HSBC's contentions:  "[T]he trouble with the lender's arguments here [is] they would just blue pencil 506(d) right out of the equation.  506(d) very clearly says if the secured debt . . . is purporting to secure a disallowed claim, then the lien can be avoided."   The court acknowledged that "there's plenty of case law that says, even in a [Chapter] 13 . . . the secured creditor can just take a pass on the whole proceeding" without imperiling his lien.  But it distinguished *Tarnow*, explaining that while that case involved a late-filed claim, here HSBC had filed a timely claim in the bankruptcy proceeding:

> The claim [in *Tarnow*] was only disallowed because it was late in a situation where they didn't need to file a claim at all. . . . So it's as if the secured creditor in *Tarnow* didn't file the claim at all.

> That's substantially different than what we have here where the claim was filed.  There was a[n] objection to it that went to the substance, did not have anything to do with the form of the claim or the lateness of the claim.

> And regardless of arguments now as to whether that would have been a meritorious objection if it had been responded to, [HSBC] just slept on its rights . . . .

Because HSBC's claim had been disallowed and the court had found no legitimate basis for setting aside the disallowance, the disallowance was "clearly a predicate under 506(d) for disallowance of the lien . . . and therefore the lien should be set aside." The court ordered that "upon Debtors' completion of a Bankruptcy, this order shall be self-executing and the subject Deed of Trust . . . is void pursuant to 11 U.S.C. § 506(d), and hereby cancelled."

## B. *Plan Confirmation and Permanent Lien-Voidance*

The parties then proceeded to the plan confirmation process. The bankruptcy court rejected several proposed plans, ultimately confirming the Blendheims' eleventh amended plan. The bankruptcy court's discussion of its reasons for rejecting the Blendheims' ninth amended plan, however, is relevant here.

After the Blendheims filed their proposed ninth amended plan, HSBC objected on two grounds. First, HSBC argued that the Blendheims "improperly seek to cancel and void [HSBC's] lien upon completion of the . . . Plan." According to HSBC, even if a lien is properly voided under § 506(d), that lien must be reinstated upon the completion of a Chapter 13 plan. This is because the Blendheims could only obtain permanent voidance of the lien through a discharge, and the Blendheims were statutorily ineligible for such a discharge because they had already received a Chapter 7 discharge within the previous four years. *See* 11 U.S.C. § 1328(f) ("[T]he court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge in a case filed under Chapter 7 . . . during the 4-year period preceding the date of the order for

relief . . . ."). Second, HSBC objected that the plan was not filed in good faith.

The bankruptcy court rejected HSBC's argument that a lien may not be voided upon plan completion. Recognizing a split of authority among lower courts, the court observed that a Chapter 13 debtor's ability to void a lien does not depend on the debtor's eligibility for a discharge. It concluded that "it is not *per se* prohibited for Debtors to propose a Chapter 13 plan stripping the First or Second Position Lien on their Residence, notwithstanding their lack of eligibility for a Chapter 13 discharge." The court went on to address good faith. It concluded that the Chapter 13 *petition* had been filed in good faith, as the Blendheims had valid reorganization goals and did not appear to be "serial repeat filers" who were "systematically and regularly abusing the bankruptcy system." However, the court ultimately concluded that the *plan* had not been proposed in good faith; the plan would authorize the Blendheims to void both the first- and second-position liens, even though the second-position lien would become fully secured (and thus legally enforceable) at the moment HSBC's first-position lien was deemed void. Accordingly, the court rejected the ninth amended plan, but permitted the Blendheims to amend.

In April 2012, the bankruptcy court confirmed the Blendheims' eleventh amended Chapter 13 plan. This plan reinstated the second-position lien, the voidance of which had caused the previous plan to fail. The court concluded that the reinstatement of the second-position lien "cure[s] what [the court] found was in bad faith before," and thus confirmed the plan. Importantly, the confirmed plan replicated the ninth amended plan in permitting the Blendheims to permanently void HSBC's first-position lien upon the completion of the

plan.  The court subsequently issued an order implementing the plan.

## II.  APPELLATE PROCEEDINGS

A. *District Court Proceedings*

HSBC appealed to the U.S. District Court for the Western District of Washington.  The district court concluded that it lacked jurisdiction over the disallowance order and order denying reconsideration because HSBC failed to timely file notice of appeal with respect to those orders.  The district court affirmed the remaining bankruptcy court orders in their entirety.

First, the court considered whether the bankruptcy court had properly voided HSBC's lien.  The court assumed that the initial voidance of the lien under § 506(d) was proper, turning directly to the question whether the Blendheims could make the voidance "permanent" in the absence of a discharge. The court rejected HSBC's argument that a debtor must be eligible for a discharge in order to accomplish "lien stripping," or permanent voidance of the lien.  Observing an "emerging consensus in this Circuit" that lien stripping can be accomplished through plan completion, the court concluded that the Bankruptcy Code permitted the Blendheims permanently to void HSBC's lien whether or not they were entitled to a discharge.  The court reasoned that it "should not impose a discharge requirement on the debtor's ability to strip a lien when none is required by statute."  Concluding otherwise, the court stated, "creates an extremely harsh result: a debtor who successfully completed a Chapter 13 plan, obeying all the requirements approved by the court, would see many of his debts spring back to life."

The district court next rejected HSBC's argument that it was denied due process. The court explained that the lien was voided in an adversary proceeding, which granted HSBC a "full and fair opportunity to litigate the issue." The district court then went on to reject HSBC's argument that the Blendheims' Chapter 13 case was not filed in good faith, explaining that the bankruptcy court's findings that the Blendheims had valid reorganization goals other than lien stripping, did not file in order to defeat state court litigation, and did not exhibit any egregious behavior, were not clearly erroneous. Finally, the district court rejected the Blendheims' request for attorneys fees.

B.  *Ninth Circuit Proceedings*

HSBC timely appealed the district court's affirmance of the bankruptcy court's orders permanently voiding HSBC's lien. The Blendheims cross-appealed, seeking a determination that the district court erred in its denial of attorneys fees. Several months after the appeal was docketed, the Blendheims successfully completed their plan payments, meaning that they were poised to permanently void HSBC's lien upon the closure of their case in the bankruptcy court. We granted HSBC's motion for an emergency stay of the bankruptcy court's order closing the case, pending the outcome of its appeal to this court.

## III.  STATUTORY FRAMEWORK

There are several Bankruptcy Code provisions at issue in this case. To assist the reader, we begin by walking through the relevant chapters and sections.

A. *The Life of a Bankruptcy Case*

A bankruptcy case begins with the filing of a petition and the creation of an estate, which comprises the debtors' legal and equitable interests in property. 11 U.S.C. § 541; Fed. R. Bankr. P. 1002(a). The filing of the petition triggers an automatic stay, prohibiting all entities from making collection efforts against the debtor or the property of the debtor's estate. 11 U.S.C. § 362. To collect on a debt, a creditor must hold a "claim," or a right to payment, *id.* § 101(5), which has been "allowed" by the bankruptcy court, *id.* § 502. Every claim must go through the allowance process set forth in 11 U.S.C. § 502 before the claim holder is entitled to participate in the distribution of estate assets. The bankruptcy court may decline to allow—or "disallow"—a claim for a variety of reasons. *See, e.g.*, *id.* § 502(b)(1) (disallowing claims "unenforceable against the debtor"); *id.* § 502(b)(9) (disallowing tardily filed proof of claim). But importantly, for creditors holding liens secured by property, filing a proof of claim and participating in the allowance process—indeed, participating in the bankruptcy process as a whole—is completely voluntary. A creditor with a lien on a debtor's property may generally ignore the bankruptcy proceedings and decline to file a claim without imperiling his lien, secure in the *in rem* right that the lien guarantees him under non-bankruptcy law: the right of foreclosure. *See U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 33 (1947) (a secured creditor "may disregard the bankruptcy proceeding, decline to file a claim and rely solely upon his security if that security is properly and solely in his possession").

The Bankruptcy Code contains two chapters designed to give relief exclusively to individual debtors: Chapters 7 and

13.  To decide which chapter to file under, a debtor must compare his means and goals against the purposes of each chapter.  In a Chapter 7 bankruptcy proceeding, also called a "liquidation," a bankruptcy trustee immediately gathers up and sells all of a debtor's nonexempt assets in the estate, using the proceeds to repay creditors in the order of the priority of their claims.  11 U.S.C. §§ 704(a)(1), 726.  The bankruptcy estate does not, however, include any wages or assets that a debtor acquires after the bankruptcy filing.  *Id.* § 541(a)(1).  Provided the debtor meets all the requirements, the court may then grant the debtor a discharge, which releases a debtor from personal liability on certain debts.  *Id.* § 727.  Thus, Chapter 7 offers debtors the chance to "make a 'fresh start,'" and "a clean break from his financial past, but at a steep price:  prompt liquidation of the debtor's assets." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).

By contrast, a Chapter 13 proceeding, often called a "reorganization," is designed to encourage financially overextended debtors to use current and future income to repay creditors in part, or in whole, over the course of a three- to five-year period.  *See Harris*, 135 S. Ct. at 1835.  Only debtors with a "regular income," which is "sufficiently stable and regular" to enable them to make payments under a plan, are eligible for Chapter 13 reorganization.   11 U.S.C. §§ 101(30), 109(e).  Unlike Chapter 7 proceedings, where a debtor's nonexempt assets are sold to pay creditors, Chapter 13 permits debtors to keep assets such as their home and car so long as they make the required payments and otherwise comply with their obligations under their confirmed plan of reorganization.

A Chapter 13 debtor formulating a proposed plan of reorganization must include certain mandatory provisions, but

also has at his disposal various discretionary provisions—the "tools" in the reorganization toolbox. *See In re Cain*, 513 B.R. 316, 322 (B.A.P. 6th Cir. 2014). Mandatory provisions, which all Chapter 13 plans must contain in order to qualify for confirmation, are set forth in §§ 1322(a) and 1325 of the Bankruptcy Code. Among other things, these sections require a plan to be "proposed in good faith," 11 U.S.C. § 1325(a)(3); satisfy the "best interests of creditors" test, which requires that the value distributed to holders of allowed, unsecured claims be no less than the amount that would have been paid if the estate were liquidated under Chapter 7, *id.* § 1325(a)(4); and provide for the submission of all or a portion of the debtor's future earnings "as is necessary for the execution of the plan," *id.* § 1322(a)(1). Discretionary provisions that a debtor may incorporate in his plan are set forth in § 1322(b). These tools include the curing or waiving of a default, *id.* § 1322(b)(3); the "assumption, rejection, or assignment of any executory contract or unexpired lease," *id.* § 1322(b)(7); and the "modif[ication of] the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims," *id.* § 1322(b)(2). The last provision, providing for the modification of creditors' rights, is one of the most advantageous tools available to Chapter 13 debtors. For example, we have interpreted § 1322(b)(2) to permit debtors to void liens on their homes to the extent that the lien is wholly unsecured by the value of the home. *In re Zimmer*, 313 F.3d 1220, 1221 (9th Cir. 2002) (evaluating modification of "unsecured claim[s]," as defined under § 506(a)).[2]

---

[2] We express no view on whether the Supreme Court's recent decision in *Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995 (2015), which interpreted § 506(d) not to permit a Chapter 7 debtor to strip a wholly

Modification is a powerful tool; voidance—or "avoidance"—of a lien permits debtors to nullify a creditor's *in rem* rights by effectively removing from a creditor his right to foreclose on a property.

Another useful tool in a Chapter 13 reorganization, which is also available in Chapter 7, is the discharge. 11 U.S.C. §§ 727, 1328. A Chapter 13 debtor seeking a discharge typically proposes a plan in which the discharge is granted at the end of the proceeding, after the debtor completes all required payments under the plan. *Id.* § 1328(a); *cf. id.* § 1328(b) (permitting the court to grant a discharge to a debtor who has not completed all payments under the plan under certain limited circumstances). A discharge releases debtors from personal liability on claims and enjoins creditors from taking any action against the debtor in the debtor's personal capacity. *Id.* § 524(a). The Bankruptcy Code authorizes debtors to receive a discharge of unsecured debt (such as credit card debt) or secured debt (such as a mortgage on a home). Ordinarily, in case of debtor default on a mortgage, a creditor is not limited to a right of foreclosure on the property; a creditor may also sue the debtor personally for any deficiency on the debt that remains after foreclosure. *See Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). The discharge eliminates the creditor's ability to proceed *in personam* against the debtor whether the debt is secured or unsecured; in the case of a secured debt, the creditor retains the ability to foreclose on the property but can no longer proceed against the debtor personally. *Id.*; *see also* 4 Collier on Bankruptcy ¶ 524.02[2][a].

---

underwater lien, affects our precedent in this area. As we note *infra* at Part IV.A, *Caulkett* does not undermine—and, in fact, supports—our conclusion in this case.

If a debtor's proposed plan conforms with the mandatory requirements described above and all voluntary provisions similarly satisfy the "good faith" and "best interests of creditors" tests, then the bankruptcy court will confirm the Chapter 13 plan. The Bankruptcy Code provides that the "provisions of a confirmed plan bind the debtor and each creditor," 11 U.S.C. § 1327, such that any issue decided under a plan is entitled to *res judicata* effect. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) ("Confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." (internal quotation marks omitted)). If the debtor complies with his obligations under the confirmed plan and makes all the required payments, the court will grant the debtor a discharge—if appropriate—and close the case. 11 U.S.C. § 350(a).

Many debtors, however, fail to complete a Chapter 13 plan successfully, often because they cannot make payments on time. Recognizing this, the Bankruptcy Code permits debtors who fail to complete their plans to convert their Chapter 13 case to a case under a different chapter, or dismiss their case entirely. *Id.* § 1307(a)–(b). But importantly, upon dismissal or conversion of a case, a debtor loses any benefits promised in exchange for the successful completion of the plan—whether *in personam*, such as discharge, or *in rem*, such as lien voidance. The Code treats any lien voided under a Chapter 13 plan as reinstated upon dismissal or conversion, restoring to creditors their state law rights of foreclosure on the debtor's property. *See id.* §§ 348(f)(1)(C)(i); 349(b)(1)(C). Section 348 of the Bankruptcy Code governs conversion of a Chapter 13 case to a case under a different chapter. It provides that a creditor holding a security interest

"as of the date of the filing of the [Chapter 13] petition"[3] shall "continue to be secured," meaning that a creditor's lien will be restored to him upon conversion. *Id.* § 348(f)(1)(C)(i). Dismissal of a Chapter 13 case has a similar effect—§ 349 provides that any lien stripped under § 506(d) will be reinstated upon dismissal of the case, unless a court orders otherwise. *Id.* § 349(b)(1)(C). In effect, conversion or dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies available to him. *See* 3 Collier on Bankruptcy ¶ 349.01[2].

## B. *BAPCPA*

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005), to make several significant changes to the Bankruptcy Code. One of Congress's purposes in enacting BAPCPA was "to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231–32 (2010); *see also* H.R. Rep. 109-31 (I), at 2 (2005) (explaining that the enactment also sought to "ensure that the system is fair for both debtors and creditors"). Included among the provisions "intended to provide greater protections for creditors," according to the House Report, are reforms "prohibiting

---

[3] Section 348(f)(1)(C)(i) indicates that conversion preserves the security of any creditor who held a security "as of the date of the filing of the petition." The Supreme Court recently clarified that the same phrase—"as of the date of filing of the petition"—in the context of § 348(f)(1)(A), refers to the Chapter 13 petition filing date. *Harris*, 135 S. Ct. at 1837. There is no reason to interpret the phrase differently in the context of § 348(f)(1)(C)(i).

abusive serial filings and extending the period between successive discharges." H.R. Rep. No. 109-31(I), at 16 (2005). One of BAPCPA's new provisions extending the period between successive discharges appears in Chapter 13, § 1328(f): "the court shall not grant a discharge of all debts provided for in the plan . . . if the debtor has received a discharge in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter." 11 U.S.C. § 1328(f)(1). As relevant here, this provision bars a Chapter 13 debtor from obtaining a discharge if he has received a Chapter 7 discharge within the past four years. Debtors who have sought sequential relief under Chapters 7 and 13, and are thus subject to § 1328(f)'s prohibition on successive discharges, are termed "Chapter 20" debtors.

Significantly, § 1328(f) does not prohibit a debtor from filing a Chapter 13 petition after receiving a Chapter 7 discharge, and so nothing prevents a debtor from taking advantage of the other Chapter 13 tools available to him, apart from discharge. *See* 8 Collier on Bankruptcy ¶ 1328.06[1]. For example, a discharge-ineligible debtor may use Chapter 13 to cure a default or "seek protection of the bankruptcy court and the automatic stay while paying debts in an orderly fashion through a plan." *Id.* Thus, Chapter 20 debtors are permitted to take advantage of many of Chapter 13's restructuring tools, notwithstanding BAPCPA's amendments. The question presented in this case is whether the Chapter 20 debtor's ineligibility for a discharge also renders him ineligible to void a lien permanently upon the completion of his Chapter 13 plan. We turn to this difficult question.

## IV. DISCUSSION

As the bankruptcy court below aptly summarized, this case presents "unique issues stemming from the almost bizarre lack of diligence by [HSBC] early on in the case." HSBC's inexplicable failure to respond to the bankruptcy court's order disallowing its claim in the bankruptcy proceeding has generated a litany of issues, including several questions of first impression. In Part A, we first address whether the bankruptcy court properly voided HSBC's lien under § 506(d) of the Bankruptcy Code. Next, we consider in Part B whether the voiding of that lien is permanent such that the lien will not be resurrected upon the completion of the Blendheims' Chapter 13 plan. This is the novel "Chapter 20" question. In Part C, we determine whether the voiding of the lien comports with due process. Finally, in Part D, we address whether the bankruptcy court clearly erred in concluding that the Blendheims' Chapter 13 petition was filed in good faith.

Before proceeding with our discussion of these questions, we briefly examine the justiciability of HSBC's claims. Because HSBC failed timely to appeal the order disallowing its claim and order denying reconsideration to the district court, we, like the district court, lack jurisdiction over these orders. *See In re Mouradick*, 13 F.3d 326, 327 (9th Cir. 1994) ("[T]he untimely filing of a notice of appeal deprives the appellate court of jurisdiction to review the bankruptcy court's order."). But HSBC's failure to timely appeal these orders does not, as the Blendheims have suggested, render HSBC's appeal of the bankruptcy court's other orders moot. The Blendheims are correct that the unappealed orders preclude this Court from offering HSBC any remedy *in bankruptcy*, but their argument misses the mark: HSBC is

not seeking a remedy in bankruptcy. Rather, as we address in greater detail below, HSBC asks us to determine whether, now that the Blendheims have successfully completed their Chapter 13 plan, HSBC maintains a lien on the property such that it may pursue its *non-bankruptcy*, state-law remedy—foreclosure—against the Blendheims. Deciding this question requires us to examine the validity of the bankruptcy court's lien-voidance order, plan confirmation order, and implementation order, which together permanently extinguish HSBC's lien and right to foreclose. HSBC timely appealed these orders, and reversal on appeal would grant effective relief to HSBC by restoring its lien on the Blendheims' home. *See Pub. Utils. Comm'n v. F.E.R.C.*, 100 F.3d 1451, 1458 (9th Cir. 1996) ("The court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal."). Accordingly, this appeal is not moot.

A. *§ 506(d) Permits Voidance of HSBC's Lien*

First, we consider whether the bankruptcy court properly voided HSBC's lien pursuant to § 506(d). We requested supplemental briefing from the parties on this question of first impression. We review *de novo* the district court's decisions on an appeal from a bankruptcy court. *In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008). A bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed *de novo*. *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009) (per curiam).

The provision at issue here, § 506(d), states in full:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).  Both parties agree that neither of the exceptions under § 506(d)(1)–(2) applies.  Looking at the main text of the provision, § 506(d) authorizes the voiding of liens securing claims that have been deemed "not an allowed secured claim."  The most straightforward reading of the text suggests that if a creditor's claim has not been "allowed" in the bankruptcy proceeding, then "such lien is void."  "Void" means "[o]f no legal effect" or "null."  Black's Law Dictionary (10th ed. 2014).  Accordingly, Congress's language appears unequivocal:  § 506(d)'s clear and manifest purpose is to nullify a creditor's legal rights in a debtor's property if the creditor's claim is "not allowed," or disallowed.

The Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), confirms this interpretation.  There, a Chapter 7 debtor sought to use § 506(d) to void a creditor's lien on his property, arguing that the creditors' claim was not an "allowed *secured* claim" because it was undersecured—in other words, the value of the property supporting the creditor's lien was less than the value of the claim.  *Id.* at 413. *Dewsnup* rejected the debtor's argument, holding that § 506(d) did not void the lien on his property because the creditor's claim had been fully "allowed."  *Id.* at 417.  The Court reasoned that its reading "gives the provision the simple and sensible function of voiding a lien whenever a

claim secured by the lien itself has not been allowed" and "ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property." *Id.* at 415–16. *Dewsnup*'s holding clarifies that § 506(d)'s voidance mechanism turns on claim allowance. *See Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995, 1999 (2015) (affirming *Dewsnup*'s interpretation of § 506(d) in the context of wholly underwater liens; "Because the Bank's claims here are both secured by liens and allowed under § 502, they cannot be voided under the definition given to the term 'allowed secured claim' by *Dewsnup*"); *see also* 4 Collier on Bankruptcy ¶ 506.06[1][a] ("[*Dewsnup*] determined that section 506(d) does not void liens on the basis of whether they are secured under section 506(a), but on the basis of whether the underlying claim is allowed or disallowed . . . .").

Here, it is undisputed that HSBC's claim was not allowed. Although HSBC filed a proof of claim, the bankruptcy court expressly disallowed the claim after the Blendheims objected and HSBC failed to respond. *See* 11 U.S.C. § 502(a) ("A claim or interest . . . is deemed allowed, unless a party in interest . . . objects."); *id.* § 502(b) ("[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . ."). The Blendheims argue, and the bankruptcy court concluded in its hearing on the Blendheims' motion for summary judgment, that if a claim is disallowed, then under § 506(d) and consistent with *Dewsnup*, the claim's associated lien is void. We agree. Although voiding HSBC's lien upon disallowance may seem a harsh consequence, we find that Congress directed such an outcome under § 506(d). Because HSBC's claim was disallowed, § 506(d) leaves HSBC with "a claim against the

debtor that is not an allowed secured claim," and therefore its lien is void.

HSBC has pointed to decisions from three of our sister circuits, but these decisions are not contrary to our holding. The Fourth, Seventh, and Eighth Circuits have concluded that bankruptcy courts may not use § 506(d) to void liens whose claims have been disallowed on the sole basis that their proofs of claim were untimely filed. *In re Shelton*, 735 F.3d 747, 750 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 2308 (2014); *In re Hamlett*, 322 F.3d 342, 350 (4th Cir. 2003); *In re Tarnow*, 749 F.2d 464, 466 (7th Cir. 1984). These courts reason that voiding liens merely because the creditor did not timely file a claim violates the long-standing, pre-Code principle that "valid liens pass through bankruptcy unaffected." *Shelton*, 735 F.3d at 748 (discussing *Dewsnup*, 502 U.S. at 418); *Hamlett*, 322 F.3d at 347–48; *Tarnow*, 749 F.2d at 465; *see U.S. Nat'l Bank*, 331 U.S. at 33 ("[A creditor] may disregard the bankruptcy proceeding, decline to file a claim and rely solely upon his security if that security is properly and solely in his possession.").

Congress codified the principle that liens may pass through bankruptcy in § 506(d)(2) (a lien securing a claim that is "not an allowed secured claim" is void unless "such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim"). This provision, an exception to § 506(d)'s voiding mechanism, means that "the failure of the secured creditor to file a proof of claim is not a basis for []voiding the lien of a secured creditor." *Tarnow*, 749 F.2d at 467 (quoting S. Rep. No. 98-65, at 79 (1983)). Our sister circuits concluded that a claim filed late is tantamount to not filing a claim at all, and that therefore, under pre-Code principles and the rationale of § 506(d)(2), an

untimely claim could not justify voiding the lien securing it. *Hamlett*, 322 F.3d at 349 ("[W]e conclude, following the reasoning set forth in *Tarnow*, that the failure to file a timely claim, like the failure to file a claim at all, does not constitute sufficient grounds for extinguishing a perfectly valid lien."); *Shelton*, 735 F.3d at 750 (same); *Tarnow*, 749 F.2d at 467.

These decisions are distinguishable from this case, where HSBC timely filed its proof of claim. Because this case does not concern a late-filed or non-filed claim, § 506(d)(2)'s exception does not apply. Moreover, the equitable concerns animating the decisions of our sister circuits do not apply with the same degree of force to the case before us. A creditor who files an untimely claim has little choice but to accept the disallowance of his claim because under the Bankruptcy Code, untimeliness is itself a basis for disallowance. *See* 11 U.S.C. § 502(b)(9). Interpreting § 506(d) to void such a claim would automatically transform a timing mistake into a death knell for the lien securing the claim. Thus, our sister circuits concluded, such a lienholder should forfeit the right to participate in the bankruptcy proceeding—and lose the opportunity "to stand in line as an unsecured creditor for that portion of debt that is not adequately secured," *Shelton*, 735 F.3d at 749; *see Tarnow*, 749 F.2d at 465—but should not lose its lien. Rather, those courts concluded that the lienholder ought to retain whatever rights it has under state law to enforce the lien.

Where a claim is timely filed and objected to, on the other hand, disallowance is not automatic. This case is a good example: HSBC timely filed its proof of claim, received service of the Blendheims' objection, and then had a full and fair opportunity to contest the disallowance of its claim—it simply chose not to. Thus, while voiding a lien securing

an untimely filed claim might be considered a "disproportionately severe sanction" for untimeliness, *In re Tarnow*, 749 F.2d at 465, voidance is not so severe a sanction in a case like this one, where the bankruptcy court disallowed the claim because, as the bankruptcy court put it, HSBC "just slept on its rights" and refused to defend its claim. HSBC refused to defend its lien after it was challenged by the Blendheims for failure of proof and because their copy allegedly bore a forged signature. In these circumstances, HSBC's failure to respond is more akin to a concession of error than a failure to file a timely claim. HSBC simply forfeited its claim.

We therefore affirm the bankruptcy court's conclusion that § 506(d) authorized the voidance of HSBC's lien. These facts present a straightforward application of § 506(d)'s textual command. Though we may one day confront the question whether an untimely filed claim justifies voiding its associated lien, that is not the issue presented in this case, and accordingly, we decline to decide it here.

B. *Chapter 20 Debtors May Permanently Void Liens*

Voiding a lien under § 506(d) might simply end the story in a different case, but not so here. As we discussed at Part III above, the Bankruptcy Code contains several provisions that reinstate a previously voided lien at the conclusion of a Chapter 13 proceeding, effectively bringing that lien back to life. HSBC argues that the only way for a debtor to avert these lien-reinstating provisions is to obtain a discharge. If correct, this would create an insurmountable obstacle for "Chapter 20" debtors, like the Blendheims, who are statutorily ineligible to obtain a discharge, having filed for Chapter 13 reorganization within four years of obtaining a

discharge under Chapter 7. *See* 11 U.S.C. § 1328(f). Accordingly, HSBC argues, liens will come back to life, and lien voidance cannot be made "permanent" after the completion of a Chapter 13 plan, in circumstances where, as here, the debtors are ineligible for a discharge.

The question whether discharge-ineligible Chapter 20 debtors may obtain the permanent release of lien obligations has divided lower courts within our circuit. *Compare Frazier v. Real Time Resolutions, Inc.*, 469 B.R. 889, 895–901 (E.D. Cal. 2012) (holding that liens may be permanently voided in a Chapter 20 case), *In re Okosisi*, 451 B.R. 90, 99–100 (Bankr. D. Nev. 2011) (same), *In re Hill*, 440 B.R. 176, 181–82 (Bankr. S.D. Cal. 2010) (same), *and In re Tran*, 431 B.R. 230, 237 (Bankr. N.D. Cal. 2010) (same), *aff'd*, 814 F. Supp. 2d 946 (N.D. Cal. 2011), *with In re Victorio*, 454 B.R. 759, 779–80 (Bankr. S.D. Cal. 2011) (holding that liens cannot be permanently voided in a Chapter 20 case), *aff'd sub nom. Victorio v. Billingslea*, 470 B.R. 545 (S.D. Cal. 2012), *In re Casey*, 428 B.R. 519, 523 (Bankr. S.D. Cal. 2010) (same), *and In re Winitzky*, 2009 Bankr. LEXIS 2430, at *14 (Bankr. C.D. Cal. May 7, 2009) (same).[4] Two other courts of appeals and bankruptcy appellate panels from three circuits, including our own, have also addressed the question, all concluding that Chapter 20 debtors may void liens irrespective of their eligibility for a discharge. *See In re Scantling*, 754 F.3d 1323, 1329–30 (11th Cir. 2014); *In re Davis*, 716 F.3d 331, 338 (4th Cir. 2013); *In re Boukatch*, 533 B.R. 292, 300–01 (B.A.P. 9th Cir. 2015); *In re Cain*, 513

---

[4] *In re Okosisi*, authored by Bankruptcy Judge Bruce Markell, and *In re Victorio*, authored by Chief Bankruptcy Judge Peter Bowie, offer strong articulations of the respective sides of the debate and so we draw from these opinions in our discussion below.

B.R. 316, 322 (B.A.P. 6th Cir. 2014); *In re Fisette*, 455 B.R. 177, 185 (B.A.P. 8th Cir. 2011).[5]  We will omit the citations here, but we note that bankruptcy and district courts in other circuits have also divided over this question.  And so we turn to the next question before us:  whether the Bankruptcy Code permits discharge-ineligible Chapter 20 debtors, like the Blendheims, to permanently void a lien upon the completion of a Chapter 13 plan.

---

[5] We note that all of the cases in the split over the permanent lien-voidance question involve attempts by a debtor to declare a totally valueless—or "underwater"—lien "unsecured" pursuant to § 506(a).  That section states that an "allowed claim of a creditor secured by a lien on property . . . is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim."  *See, e.g.*, *Davis*, 716 F.3d at 335.  Once declared unsecured, the majority of courts hold that a debtor may void such a lien using § 1322(b)(2), which expressly authorizes the modification of the rights of unsecured creditors.  *See id.*  "The end result is that section 506(a), which classifies valueless liens as unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy court, in a Chapter 13 case, to strip off a lien against a primary residence with no value."  *Id.*; *see also Zimmer*, 313 F.3d at 1226–27 (joining the majority of courts in holding that § 1322(b)(2) allows a Chapter 13 debtor to void wholly unsecured liens).  We are not concerned here with the propriety of this form of lien-stripping.

Here, the bankruptcy court voided HSBC's secured claim under § 506(d) because it was disallowed, not because the claim was unsecured as defined under § 506(a).  For our present purposes, the particular statutory section under which the lien is originally modified or voided is neither here nor there; we cite the foregoing cases not for their analysis of § 506(a) and § 1322(b)(2), but rather with respect to their discussion of the permanent lien-voidance question.  Whether a lien is voided under § 506(d), as here, or under § 1322(b)(2), as in the mine-run of cases, the essential question remains the same: can a lien voided during a Chapter 13 proceeding remain permanently voided in a case where the debtor is barred from receiving a discharge?

1.  A discharge is not necessary to close a Chapter 13 case or permanently void a lien

HSBC argues that a discharge is necessary to obtain the benefits of lien voidance because, apart from conversion or dismissal, discharge is the only mechanism available to bring a Chapter 13 case to close in a manner that makes lien voidance "permanent."  As authority for that proposition, HSBC points to our decision in *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999).  There, we considered the "appropriate standard of bad faith as 'cause' to dismiss a Chapter 13 bankruptcy petition with prejudice."  *Id.* at 1220 (footnote omitted).  In the course of affirming the Bankruptcy Appellate Panel's dismissal of an action with prejudice upon findings of bad faith concealment of assets and inflation of expenses, we stated, "[a] Chapter 13 case concludes in one of three ways:  discharge pursuant to § 1328, conversion to a Chapter 7 case pursuant to § 1307(c) or dismissal of a Chapter 13 case 'for cause' under § 1307(c)."  *Id.* at 1223 (footnote omitted).  As we explained above, dismissal and conversion reinstate a previously voided lien. *See* 11 U.S.C. §§ 348, 349.  Lower courts have therefore interpreted this language in *Leavitt* as making clear the "legal fact" that "the only way to make a lien strip 'permanent' is by discharge because conversion or dismissal reinstates the avoided lien." *Victorio*, 454 B.R. at 778; *see also Casey*, 428 B.R. at 522 ("In the case of a 'Chapter 20,' there can be no discharge, and conversion is not an option.  Dismissal is the necessary result, without discharge, when a debtor performs a plan that leaves one or more debts wholly or partially unpaid.").  HSBC characterizes this as the "*Leavitt* rule" and argues that the only way for a Chapter 20 debtor to permanently void a creditor's lien is through a discharge.  Under HSBC's theory, the Blendheims' ineligibility for a discharge means that their

Chapter 13 case must end in conversion or dismissal, either of which would restore the lien previously voided under § 506(d).

HSBC's theory rests upon a fatal flaw: our decision in *Leavitt* imposed no "rule" that a Chapter 13 case must end in conversion, dismissal, or discharge, and the Bankruptcy Code is devoid of any such requirement. In *Leavitt*, we were not tasked with deciding all the ways in which a Chapter 13 case can end. Rather, we were called upon to determine whether the bankruptcy court below had properly dismissed a bad faith Chapter 13 petition with prejudice. Our statement that a Chapter 13 case "concludes in one of three ways" was not necessary to our holding, and is therefore dictum. That much should be clear from the context in which the statement was made; in fact, we made clear in the sentence immediately following that "[h]ere, we are only concerned with dismissal." *Leavitt*, 171 F.3d at 1223. Our statement in *Leavitt* should not be read to describe an exhaustive list of ways in which a Chapter 13 case may conclude.

Nor has HSBC cited any provision in the Bankruptcy Code stating that a Chapter 13 plan may end only in conversion, dismissal, or discharge. Indeed, contrary to the so-called "*Leavitt* rule," the Code contemplates closure of a case pursuant to § 350(a), which provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." With closure, no conversion, dismissal, or discharge is necessary. *See Davis*, 716 F.3d at 337–38 (adopting the debtor's argument that "[i]n a successful Chapter 20 case . . . the plan is completed, and the case is closed administratively without dismissal or conversion"); *see also Scantling*, 754 F.3d at 1330 (concluding that because the creditor's claim is not secured,

thus making § 1325(a)(5) inapplicable, "the debtor's ineligibility for a discharge is irrelevant to a strip off in a Chapter 20 case"); *see also Okosisi*, 451 B.R. at 99 ("The court finds that in this situation the proper result is for the court to close the case without discharge.  11 U.S.C. § 350(a).").

Fundamentally, a discharge is neither effective nor necessary to void a lien or otherwise impair a creditor's state-law right of foreclosure.  As defined under the Bankruptcy Code, a "discharge" operates as an injunction against a creditor's ability to proceed against a debtor personally.  *See* 11 U.S.C. § 524(a)(2) (a discharge "operates as an injunction against . . . an action . . . to collect, recover or offset any such debt as a *personal liability* of the debtor" (emphasis added)).  Discharges leave unimpaired a creditor's right to proceed *in rem* against the debtor's property.  *See Johnson*, 501 U.S. at 84 ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); 4 Collier on Bankruptcy ¶ 524.02 ("[T]he provisions [of § 524] apply only to the personal liability of the debtor, so they do not affect an otherwise valid prepetition lien on property.").  It follows logically that there is no reason to make the Bankruptcy Code's *in rem* modification or voidance provisions contingent upon a debtor's eligibility for a discharge, when discharges do not affect *in rem* rights.  *See Fisette*, 455 B.R. at 186–87 & n.9 (explaining that the strip off of a lien "is not the equivalent of receiving a discharge" because "a discharge releases a debtor's *in personam* liability, but it does not affect the lien"); *Hill*, 440 B.R. at 182 ("Since the . . . debt was already discharged, or changed to non-recourse status in the Chapter

7 case, a second discharge for the Debtors in this Chapter 13 case would be redundant.").

We acknowledge that there has been considerable confusion on this point. In *Victorio*, the bankruptcy court rejected the notion that closure pursuant to § 350(a) constituted a "fourth option" for ending a Chapter 13 case, reasoning in part that "prior to BAPCPA, the only way a lien strip became permanent in any Chapter 13 case was through discharge." 454 B.R. at 775. The court observed that "the Bankruptcy Code should not be read to abandon past bankruptcy practice absent a clear indication that Congress intended to do so," *id.* at 776 (quoting *In re Bonner Mall P'ship*, 2 F.3d 899, 912 (9th Cir. 1993)), and therefore found that discharge was a necessary predicate for lien voidance. However, because bankruptcy discharge, by definition, affects only *in personam* liability, it has never served as the historical means for ensuring that the Bankruptcy Code's various mechanisms for modifying or voiding a creditor's *in rem* rights remained in place at the conclusion of a plan. *See, e.g.*, 11 U.S.C. § 506(d) (discussed above); *id.* § 1322(b)(2) (permitting modification of the rights of holders of certain secured claims and holders of unsecured claims); *id.* § 522(f) (permitting debtors to void liens impairing exemptions on certain assets). No discharge is, or ever has been, necessary to accomplish the outcome that the Blendheims seek.[6]

---

[6] Several lower court decisions have articulated the following view: "Under the Bankruptcy Code, there are two ways to make an enforceable debt go away permanently. One is to pay it, in full. The other is to obtain a discharge of any remaining obligation." *Victorio*, 454 B.R. at 777 (quoting *Casey*, 428 B.R. at 522). Section 1325 of the Bankruptcy Code, which sets forth requirements for confirming a Chapter 13 plan, requires that holders of "allowed secured claims" "retain the lien securing such claim" under a proposed plan "until the earlier of the payment of the

*Victorio* cited various cases for the proposition that modifications to creditors' rights are effective only to the extent that they can be "discharged," *Victorio*, 454 B.R. at 777–78, but this conclusion does not follow from the cases. Each of the cited cases concerns certain non-dischargeable debts for which the debtor remains *personally liable* after the completion of his Chapter 13 plan. *See, e.g.*, *Bruning v. United States*, 376 U.S. 358 (1964) (nondischargeable post-petition interest on unpaid tax debt remains a personal liability of the debtor); *In re Foster*, 319 F.3d 495 (9th Cir. 2003) (non-dischargeable post-petition interest on child support obligation may be collected personally against the debtor); *In re Ransom*, 336 B.R. 790 (B.A.P. 9th Cir. 2005) (non-dischargeable student loan interest is recoverable by creditor), *rev'd on other grounds sub nom. Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193 (9th Cir. 2008); *In re Pardee*, 218 B.R. 916 (B.A.P. 9th Cir. 1998) (non-dischargeable pre-petition interest on student loan debt remains personal liability of the debtor). These cases stand for nothing more than the uncontroversial proposition that the Bankruptcy Code renders certain debts non-dischargeable; if the debt is non-dischargeable, then a debtor remains personally liable for that debt. To conclude based on these cases that "the only way to make a lien strip 'permanent' is by discharge," is to ignore the Bankruptcy Code's unequivocal distinction between *in personam* and *in rem* liability. *See* 11 U.S.C. § 524 (defining a "discharge" as an

---

underlying debt determined under nonbankruptcy law; or discharge under section 1328." 11 U.S.C. § 1325(a)(5)(B)(i). It is significant that § 1325 applies only to "allowed secured claims"; the provision is silent with respect to secured claims that were not filed or liens securing disallowed claims, like the one at issue here. This case does not involve an allowed but wholly unsecured claim.

injunction against actions to recover debt "as a *personal liability* of the debtor" (emphasis added)).  These cases cannot be read for the proposition that a discharge is necessary to permanently eliminate *in rem* liability.

2. Lien voidance does not subvert Congress's intent in enacting BAPCPA

HSBC contends that even if discharge is not the sole route to permanent lien-voidance, permitting Chapter 20 debtors to achieve permanent lien-voidance circumvents Congress's purpose in enacting § 1328(f)'s limitation on successive discharges.  The bankruptcy court in *Victorio* reasoned that permitting debtors to achieve "*de facto* discharge of liability" through the closure mechanism effects an "end run" around BAPCPA's "clear mandate."  454 B.R. at 780; *see also Cain*, 513 B.R. at 320–21 (collecting cases subscribing to the "de facto discharge" argument).  The *Victorio* court also suggested that Congress did not intend to allow discharge-ineligible debtors to void liens upon case closure, while similarly situated, discharge-*eligible* debtors must complete all the requirements of a Chapter 13 plan in order to permanently void a lien.  454 B.R. at 780.  Thus, HSBC argues, allowing the Blendheims to permanently avoid liability on the lien subverts Congress's purpose in enacting BAPCPA and should not be permitted irrespective of whether there are alternative routes besides a discharge for closing a Chapter 13 case.

We disagree that permitting the Blendheims to void HSBC's lien subverts Congress's intent in prohibiting successive discharges.  We take Congress at its word when it said in § 1328(f) that Chapter 20 debtors are ineligible for a *discharge*, and only a discharge.  Had Congress wished to

prevent Chapter 7 debtors from having a second bite at the bankruptcy apple, then it could have prohibited Chapter 7 debtors from filing for Chapter 13 bankruptcy entirely. *See, e.g.*, 11 U.S.C. § 109(g) ("[N]o individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days . . . ."); *see also Johnson*, 501 U.S. at 87 (citing express prohibitions on serial filings and explaining that "[t]he absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions . . . convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief"). Nothing in the Code conditions Chapter 13's other benefits or remedies on discharge eligibility. *See Cain*, 513 B.R. at 322 ("Lien-stripping is an important tool in the Chapter 13 toolbox, and it is not conditioned on being eligible for a discharge."); *Fisette*, 455 B.R. at 186 ("We see no merit in the argument . . . that allowing a strip off in a 'no discharge' Chapter 20 case amounts to allowing the debtor a 'de facto' discharge."). And, for the reasons we have discussed, we think that if Congress had meant to prohibit Chapter 20 debtors from voiding or modifying creditors' *in rem* rights, it would not have done so by restricting the availability of a mechanism that by definition only affects *in personam* liability.

Our interpretation gives full effect to Congress's intent to prevent abusive serial filings and successive discharges through BAPCPA. Prohibiting successive discharges helps curb abuse of the bankruptcy system by ensuring that a debtor once granted a discharge of debt is not granted yet a second discharge just a few years later. A debtor who has racked up significant credit card debt and received a Chapter 7 discharge, for example, will not obtain a second clean slate

upon the filing of a Chapter 13 petition. Further, we agree with the district court that reaching the contrary conclusion would create "an extremely harsh result" that is inconsistent with the Bankruptcy Code's text and purpose. Congress created the Chapter 13 mechanism to permit eligible debtors, who are capable of diligently meeting their obligations under plans, to reorganize their financial affairs and pay a greater amount on debts than they would have otherwise done under a Chapter 7 liquidation. Section 1328(f) does not purport to interfere with the important lien-stripping "tool in the Chapter 13 toolbox." *Cain*, 513 B.R. at 322; *see Davis*, 716 F.3d at 338 (positing that "Congress intended to leave intact the normal Chapter 13 lien-stripping regime where a debtor could otherwise satisfy the requirements for filing a Chapter 20 case").

Interpreting the Bankruptcy Code to permit lien modification through case closure does not, as *Victorio* warned, place discharge-ineligible debtors like the Blendheims in a better position than discharge-eligible debtors. *Victorio* posited that discharge-eligible debtors who fail to complete their plans will see their previously voided liens reinstated under § 349's dismissal provision, whereas discharge-ineligible Chapter 20 debtors "can just have the case closed and thereby make the lien []voidance 'permanent.'" 454 B.R. at 780. We respectfully disagree. Nothing in the Code compels a bankruptcy court to close, rather than dismiss, a Chapter 13 case when a debtor fails to complete his plan. In addition, the availability of case closure does not eliminate a bankruptcy court's duty to ensure that a debtor complies with the Bankruptcy Code's "best interests of creditors" test, 11 U.S.C. § 1325(a)(4), and the good faith requirement for confirming a Chapter 13 plan, *id.* § 1325(a)(3). Rather, the bankruptcy court here properly

conditioned permanent lien-voidance upon the successful completion of the Chapter 13 plan payments. If the debtor fails to complete the plan as promised, the bankruptcy court should either dismiss the case or, to the extent permitted under the Code, allow the debtor to convert to another chapter.

***

In sum, we do not interpret BAPCPA to limit a debtor's access to Chapter 13 lien-modification provisions by virtue of § 1328(f)'s limitation on successive discharges, and we conclude that a debtor's ineligibility for a discharge has no bearing on his ability to permanently void a lien. We join the Fourth and Eleventh Circuits in concluding that Chapter 20 debtors may permanently void liens upon the successful completion of their confirmed Chapter 13 plan irrespective of their eligibility to obtain a discharge. *Scantling*, 754 F.3d at 1329–30; *Davis*, 716 F.3d at 338. Therefore, we hold that the Blendheims' ineligibility for a discharge does not prohibit them from permanently voiding HSBC's lien.

## C. *Voidance of the Lien Satisfied Due Process*

Next, we turn to HSBC's claim that the bankruptcy court failed to afford HSBC due process before voiding its lien. Whether adequate notice has been given for the purposes of due process is a mixed question of law and fact that we review *de novo*. *In re Brawders*, 503 F.3d 856, 866 (9th Cir. 2007).

HSBC raises two related arguments in support of its due process claim, both of which essentially claim a lack of adequate notice. First, HSBC argues that the validity of its

lien was not "effectively" determined under the procedural requirements set forth under the Bankruptcy Rules. Federal Rule of Bankruptcy Procedure 7001(2) requires actions determining the "validity, priority, or extent of a lien" to be brought in an adversary proceeding, which imposes certain notice requirements on plaintiffs. *See* Fed. R. Bankr. P. 7004 (requiring service of adversary summons and complaint in compliance with Federal Rule of Civil Procedure 4). Although HSBC acknowledges that the Blendheims initiated an adversary proceeding to bring their motion for summary judgment seeking lien voidance, and thus the lien was "technically voided in the Adversary Proceeding," HSBC contends that the lien was substantively voided by the disallowance order because the disallowance of its claim rendered voidance a "fait accompli." Accordingly, HSBC argues, the validity of its lien was actually decided outside of an adversary proceeding. Second, HSBC argues that the bankruptcy court "allowed [HSBC]'s lien to be avoided 'by ambush,'" because the Blendheims never mentioned their intent to void HSBC's lien in their 2009 objection to the proof of claim. According to HSBC, not only did the Blendheims fail to give notice of their intent to seek voidance of the lien, but they affirmatively represented in several court filings that the lien was valid—suggesting that they would not seek to void the lien.

Both of HSBC's arguments fail under the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). In that case, the debtor filed a Chapter 13 petition and proposed a plan providing for repayment of the principal and discharge of the accrued interest on student loans he owed to United Student Aid Funds, Inc. ("United"). *Id.* at 264. After being served with notice of the plan, United filed a proof of claim reflecting

both the principal and the accrued interest on the loan. *Id.* at 265. United did not, however, object to the plan's proposed discharge of interest or Espinosa's failure to initiate an adversary proceeding to determine the dischargeability of that debt. The bankruptcy court eventually confirmed the plan, and the Chapter 13 Trustee mailed United a notice of the plan confirmation, which advised United of its right to object within 30 days. *Id.* United did not object, and after Espinosa successfully completed the plan, the court granted him a discharge of the student loan interest. *Id.* at 265–66.

It was not until three years later, when United attempted to collect on the unpaid interest and Espinosa moved for an order holding United in contempt for violating the discharge injunction, that United raised an objection to the discharge order. *Id.* at 266. United complained that the Bankruptcy Code requires student loans to be discharged in an adversary proceeding, and because Espinosa did not initiate any such proceeding or serve United with an adversary complaint, United was deprived of its due process rights. *Id.* The Court rejected United's argument, explaining that the standard for constitutionally adequate notice is "notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 272 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Because United received actual notice of the filing and contents of Espinosa's plan, which United acknowledged by filing a proof of claim, the Court concluded, "[t]his *more than satisfied* United's due process rights." *Id.* (emphasis added). Accordingly, the Court held that there was no due process violation. *Id.*

*Espinosa* indicates that regardless of whether HSBC's lien was technically voided in the adversary proceeding or upon entry of the default order, due process was satisfied when HSBC received notice that the Blendheims filed their objection to its proof of claim. Once HSBC received notice of that filing, it was deemed to have notice that its claim might be affected and it ignored the ensuing proceedings to its peril. *See In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) (holding that for due process purposes, when the holder of a claim receives notice that the debtor has initiated bankruptcy proceedings, "it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril"). It bears emphasis that all that is constitutionally required for adequate notice is information sufficient to alert a creditor that its rights *may* be affected. *See id.* Due process does not demand the degree of specificity of notice to which HSBC claims entitlement. It is neither the court's nor the debtor's responsibility to ensure that a creditor fully understands and appreciates the consequences of the bankruptcy proceeding. Rather, it is HSBC's responsibility, once apprised of the bankruptcy proceeding, to investigate the potential consequences in store for its lien. HSBC did not have to file a claim to preserve its lien; but once it chose to do so, it subjected itself to the jurisdiction of the bankruptcy court and its rules. And once the Blendheims objected to HSBC's claim pursuant to § 502(a), there can be no doubt that HSBC was on notice that there might be consequences.

Indeed, the record shows that HSBC's inexplicable failure to assert its rights, and not any defect in process, led to its predicament here. After HSBC filed a proof of claim in the Blendheims' Chapter 13 bankruptcy, the Blendheims objected to the proof of claim and served HSBC's servicing

agent with a copy of the objection. HSBC failed to respond. Then, the bankruptcy court entered the default order disallowing HSBC's claim, and again, HSBC was served with a copy of the order. Once again, HSBC failed to respond, taking no action to undo the disallowance order. The Blendheims then initiated adversary proceedings declaring their intent to void the lien and the bankruptcy court advised HSBC to move to set the disallowance order aside. Still, HSBC did nothing. HSBC waited over a year and a half after the default order was entered before it finally moved to set aside the disallowance order. Predictably, the court found no excusable neglect present on these facts and declined to grant HSBC's request. Surely, the process given was sufficient to put HSBC on notice that its lien might be affected.

Far from revealing a due process violation, the record shows that HSBC's rights were honored at every turn. HSBC's own failure to assert its rights, which resulted in the entry of the lien-voidance order, does not make the lien-voidance order constitutionally defective. Accordingly, we affirm the district court's determination that the bankruptcy court afforded HSBC due process.

## D. *The Chapter 13 Petition was Filed in Good Faith*

A Chapter 13 petition may be dismissed "for cause," pursuant to § 1307(c) of the Bankruptcy Code, if it was filed in bad faith. *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam). We review for clear error a bankruptcy court's determination whether or not a plan was filed in bad faith. *Id.* In determining whether a debtor acted in bad faith, a bankruptcy judge must review the "totality of the circumstances," and consider the following factors:

(1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;

(2) the debtor's history of filings and dismissals;

(3) whether the debtor only intended to defeat state court litigation; and

(4) whether egregious behavior is present.

*Leavitt*, 171 F.3d at 1224 (internal quotation marks, citations, and alterations omitted). "[B]ankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan." *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982).

HSBC argues that the Blendheims' Chapter 13 petition was filed in bad faith for two reasons. First, the Blendheims maintained two simultaneous bankruptcy proceedings at once because they filed the Chapter 13 proceeding while the Chapter 7 was technically still open. Second, the Blendheims filed the Chapter 13 proceeding to "re-invoke the automatic stay and stop [HSBC]'s foreclosure after allowing the stay to be lifted" following the Chapter 7 case.

Although we have held that successive filings do not constitute bad faith *per se*, *In re Metz*, 820 F.2d 1495, 1497 (9th Cir. 1987), we have never addressed whether simultaneous filings should be treated differently. Two of our sister circuits have addressed whether a debtor is permitted to

maintain simultaneous bankruptcy cases as a matter of law, reaching different conclusions: *In re Sidebottom*, 430 F.3d 893 (7th Cir. 2005) (concluding that simultaneous proceedings are impermissible *per se*), and *In re Saylors*, 869 F.2d 1434 (11th Cir. 1989) (rejecting a *per se* prohibition on simultaneous filings). In *Sidebottom*, the Seventh Circuit rejected the rule, adopted by some courts, that a debtor can maintain simultaneous bankruptcies relating to the same debt. 430 F.3d at 898; *see also In re Jackson*, 108 B.R. 251, 252 (Bankr. E.D. Cal. 1989) ("The weight of authority holds that once a bankruptcy case is filed, a second case which affects the same debt cannot be maintained."). Reasoning that "the Code is designed to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code," the court instead sided with other courts that have adopted a *per se* prohibition on simultaneous bankruptcy proceedings. *Sidebottom*, 430 F.3d at 898 (internal quotation marks omitted). The Seventh Circuit therefore concluded that the debtors in that case could not proceed with their Chapter 13 case because the petition was filed while the Chapter 7 case remained open. *Id.* at 899.

The Eleventh Circuit, by contrast, has rejected any *per se* rule against filing a Chapter 13 petition during the pendency of a Chapter 7 case. *Saylors*, 869 F.2d at 1437. In *Saylors*, the Eleventh Circuit observed that Congress enacted Chapter 13 to "create[] an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy." *Id.* at 1436 (quoting H.R. Rep. No. 86-193, at 2 (1959)). It reasoned that Chapter 13 reorganizations remain accessible to debtors who have already received a Chapter 7 discharge, and thus barring debtors from Chapter 13 reorganization "would prevent deserving debtors from utilizing the plans." *Id.* at 1438. "As

a practical matter," the court also noted, "considerable time" often elapses after a Chapter 7 debtor receives a discharge but before a trustee can close the case. *Id.* It thus concluded that a *per se* rule against filing a Chapter 13 proceeding while a Chapter 7 case remained open (although the discharge had been issued) "would conflict with the purpose of Congress in adopting and designing chapter 13 plans." *Id.* at 1437. Rather than prohibiting such filings across the board, the court concluded that the Bankruptcy Code's good faith requirement "is sufficient to prevent *undeserving* debtors from using this procedure, yet does not also prevent *deserving* debtors from using the procedure." *Id.* at 1436. After reviewing the bankruptcy court's findings regarding the debtor's good faith and finding no clear error, the court affirmed the bankruptcy court's conclusion that the confirmed plan was proposed in good faith. *Id.* at 1438–39.

We have already acknowledged the host of benefits that Chapter 13 reorganizations offers to debtors and have found no indication that Congress intended to deny such benefits to Chapter 20 debtors—who, by definition, file their Chapter 13 cases hard on the heels of a Chapter 7 discharge. Our conclusion here follows almost as a matter of course. We agree with the Eleventh Circuit's reasoning and reject a *per se* rule prohibiting a debtor from filing for Chapter 13 reorganization during the post-discharge period when the Chapter 7 case remains open and pending. Because nothing in the Bankruptcy Code prohibits debtors from seeking the benefits of Chapter 13 reorganization in the wake of a Chapter 7 discharge, we see no reason to force debtors to wait until the Chapter 7 case has administratively closed before filing for relief under Chapter 13. We also agree with the Eleventh Circuit that the fact-sensitive good faith inquiry, in which courts may examine an individual debtor's purpose in

filing for Chapter 13 relief and take into account the unique circumstances of each case, is a better tool for sorting out which cases may proceed than the blunt instrument of a flat prohibition.

This conclusion also better comports with our decision in *In re Metz*. In *Metz*, we concluded that it did not constitute bad faith *per se* for a Chapter 13 debtor to include a mortgage claim in his plan of reorganization, even if his personal liability on the mortgage was discharged in a prior Chapter 7 proceeding.[7] 820 F.2d at 1497–98. We declined to prohibit successive filings across the board, instead applying our established "totality of the circumstances" test to determine whether the debtor filed his successive petition in good faith. *Id.* at 1498. We upheld the bankruptcy court's good faith determination as not clearly erroneous, observing that the debtor had recently received an increase in salary and explaining that "[s]uch a bona fide change in circumstances" is precisely the kind of evidence that a bankruptcy judge should examine to determine whether a successive filing is proper. *Id.* at 1498–99.

---

[7] Four years after our decision in *Metz*, the Supreme Court expressly approved of successive filings of Chapter 7 and Chapter 13 cases in *Johnson v. Home State Bank*. 501 U.S. at 80. While the Court did not reach the issue of good faith, it determined that nothing in the Bankruptcy Code prohibits successive filings and noted that Chapter 13 contains various provisions protecting creditors, strongly implying that a successive filing does not itself constitute abuse of the bankruptcy system. *See id.* at 88 ("[G]iven the availability of [Chapter 13's creditor-protective] provisions, . . . we do not believe that Congress intended the bankruptcy court to use the Code's definition of 'claim' to police the Chapter 13 process for abuse.").

Examining the facts presented here, and considering the totality of the circumstances, the bankruptcy court did not err in finding that the petition and plan were filed in good faith. The Blendheims received their Chapter 7 discharge in January 2009 and filed their Chapter 13 petition the following day; their Chapter 7 case was not closed until November 2010. Contrary to HSBC's contention that the Blendheims sought Chapter 13 relief solely to avert foreclosure, the bankruptcy court found that the Blendheims sought Chapter 13 protection for additional, valid reasons. The Blendheims filed their Chapter 13 case to deal with fraud claims and other issues surrounding the first-position lien, to repay secured debt owed to their homeowners association, and to clarify how post-petition debts would be paid. According to the court, the Blendheims "do not appear to be serial 'repeat filers' [who are] systematically and regularly abusing the bankruptcy system." And with respect to the automatic stay, the court stated: "Although the Chapter 13 filing appears to be motivated by Debtors' wish to avoid the foreclosure sale of their Residence, the Court does not find that filing for Chapter 13 bankruptcy under those circumstances necessarily constitutes bad faith." It explained, "[m]any Chapter 13 debtors file for bankruptcy on the eve of foreclosure sale as a last resort." The bankruptcy court did not clearly err in concluding that the Blendheims filed their Chapter 13 petition in good faith on these facts.

## V.  CONCLUSION

We conclude that the bankruptcy court properly voided HSBC's lien under § 506(d), confirmed the Blendheims' Chapter 13 plan offering permanent voidance of HSBC's lien upon successful plan completion, and found no due process violation or bad faith purpose in filing the Chapter 13

petition. Accordingly, we affirm the bankruptcy court's lien-voidance order, plan confirmation order, and plan implementation order.

With respect to the Blendheims' cross-appeal for attorneys' fees, we conclude that the district court lacked jurisdiction to determine whether the Blendheims were entitled to attorneys' fees because this issue was not addressed, in the first instance, by the bankruptcy court. *See In re Vylene Enters., Inc.*, 968 F.2d 887, 895 (9th Cir. 1992) ("[W]e do not have jurisdiction to review cases in which the district court affirms an order of the bankruptcy court that is not final."). Accordingly, we vacate the district court's denial of fees and instruct the district court to remand to the bankruptcy court for a determination of the Blendheims' entitlement to attorneys' fees in the first instance.

The judgment of the district court is

**AFFIRMED in part, VACATED in part, and REMANDED.** Costs on appeal are awarded to Appellees.