PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: RICHARD HAMLETT,
*Debtor.*

RICHARD HAMLETT,
　　*Debtor-Appellant,*

v.

AMSOUTH BANK,
　　*Defendant-Appellee.*

⎫
⎬  No. 02-1642
⎭

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CA-02-463-7, BK-98-2653)

Argued: January 21, 2003

Decided: March 6, 2003

Before WILKINS, Chief Judge, and WILKINSON and
MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Chief Judge Wilkins and Judge Wilkinson joined.

## COUNSEL

**ARGUED:** Gary Michael Bowman, Roanoke, Virginia, for Appel-
lant. Matthew Douglas Huebschman, JEFFREY A. FLEISCH-
HAUER, P.C., Roanoke, Virginia, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Richard Hamlett appeals the district court judgment affirming two orders of the bankruptcy court — one vacating a prior default judgment against his creditor, Amsouth Bank, and one denying his motion to avoid liens held by Amsouth. The bankruptcy court did not abuse its discretion in vacating Hamlett's default judgment on the ground that he had not properly served Amsouth. Nor did the bankruptcy court err in holding that its disallowance of Amsouth's claims as untimely did not void Amsouth's underlying liens. Accordingly, we affirm.

I.

The parties have stipulated to all relevant facts. In 1983, Hamlett conveyed deeds of trust on several parcels of real property located in Salem, Virginia to secure loans serviced by Dovenmuehle Mortgage, Inc. for Amsouth Bank. At some point (neither the record nor the briefs indicate exactly when), Hamlett filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C.A. §§ 701-28 (West 1993 and Supp. 2002). In the course of Hamlett's bankruptcy proceedings, Amsouth (through Dovenmuehle) filed seven proofs of claim regarding its secured interests in Hamlett's property. Upon the trustee's objection, the bankruptcy court disallowed five of these claims as not timely filed.

On October 23, 2000, Hamlett filed an adversary proceeding requesting, pursuant to 11 U.S.C.A. § 506(d) (West 1993), that the court "avoid" the liens held by Amsouth on his properties. Hamlett served his complaint by certified mail on Edward R. Parker, Amsouth's registered agent in Virginia. When Amsouth did not file a responsive pleading and did not appear at the pre-trial conference, Hamlett moved for a default judgment. On January 22, 2001, the bankruptcy court granted the motion and ordered that the Amsouth liens be "avoided."

In response, on January 30, 2001, Amsouth filed an answer to the complaint and moved that the court set aside the default judgment on

the ground that service on its registered agent did not comply with Federal Rule of Bankruptcy Procedure 7004(h). *See* Fed. R. Bankr. P. 7004(h). The bankruptcy court vacated the default judgment, finding service did not meet Rule 7004(h)'s requirement that service be made on an "officer" of the institution.

The bankruptcy court then proceeded to determine the merits of the adversary proceeding, *i.e.*, whether Amsouth's liens were void under § 506(d) because Amsouth had not timely filed its claims. The court concluded that Amsouth's failure to timely file its claims did not automatically extinguish its underlying liens and thus ordered that Hamlett's "complaint/motion to avoid the liens [be] denied and dismissed."

Hamlett appealed both orders to the district court. After full briefing and oral argument, the district court affirmed, adopting as its "findings and opinions" the rationale of the bankruptcy court. Hamlett then noted a timely appeal to this court.

Because a district court sits as an appellate court in bankruptcy matters, we apply the same standard of review that the district court applied. In this case, we review the bankruptcy court's order vacating Hamlett's default judgment for abuse of discretion. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 895 (4th Cir. 1987). We review *de novo* its order denying Hamlett's motion to avoid Amsouth's liens. See *In re Bunker*, 312 F.3d 145, 150 (4th Cir. 2002); *see also In re Southeast Hotel Props. Ltd. P'ship*, 99 F.3d 151, 154 (4th Cir. 1996).

## II.

The bankruptcy court vacated Hamlett's default judgment against Amsouth, finding that Hamlett's service of process on Amsouth did not comply with the requirement under Federal Rule of Bankruptcy Procedure 7004(h) that service of process be made on an officer of the institution. Hamlett argues that service on Amsouth's registered agent satisfied the requirements of the rule.

With exceptions not relevant here, Rule 7004(h) provides:

> Service on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act) in a contested matter or adversary proceeding shall be made by certified mail addressed to an officer of the institution.

Fed. R. Bankr. P. 7004(h).

In support of his contention that service on Amsouth's registered agent satisfied Rule 7004(h), Hamlett focuses initially not on the language of the rule, which was enacted as part of the Bankruptcy Reform Act of 1994, but on its legislative history. In fact, neither the plain language of Rule 7004(h) nor its history support Hamlett's position.

A comparison of Rule 7004(h)'s language with that of other federal rules governing service of process on non-governmental entities and corporations clearly evidences a Congressional intent to fashion more rigorous service of process requirements for adversary proceedings initiated against insured depository institutions. For example, Rules 4(d)(2)(A) and 4(h) of the Federal Rules of Civil Procedure and Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure, all of which were promulgated prior to Rule 7004(h), provide for service of process on "an officer, a managing or general agent, or on any other agent authorized by appointment or by law." In contrast, Rule 7004(h) does not contain any of the language referring to agents, but instead provides for service solely on "an officer of the institution." Congress could easily have included within Rule 7004(h) the same "general" or "authorized" agent language contained in the other rules. Indeed, simply adopting the language of the other rules would seem to have been the easiest course. That Congress did not do this indicates clearly that it did not deem service on a designated "agent" sufficient under Rule 7004(h).

The Rule's legislative history bears this out. Contrary to Hamlett's suggestion that the "only" purpose of the Rule was "to require that service of process on a bank be accomplished by certified mail," the legislative history indicates that Congress added Rule 7004(h) largely in response to the perceived need to grant additional safeguards to depository institutions involved in adversary proceedings. *See* 139 Cong. Rec. S707-10 (daily ed. Jan. 26, 1993) (discussing bill to

amend Rule 7004 to require that service of process on an insured depository institution be made upon an officer of the institution); 140 Cong. Rec. S4576-77 (daily ed. April 20, 1994) (same). In doing so, Congress apparently determined that requiring service of process by certified mail *and* restricting such service to an "officer" of these institutions would achieve this goal. Thus, nothing in the Rule itself or its history suggests that Congress intended the term "officer" in Rule 7004(h) to include "registered agent."

Hamlett also seeks to rely on Virginia law for his contention that service on Amsouth's registered agent was proper. He first maintains that under Virginia law "a corporation is not required to appoint a registered agent, but if it does appoint a registered agent," as Amsouth did, then service on that agent satisfies Virginia law and, by extension, Rule 7004(h). Alternatively, Hamlett contends that in designating a registered agent, Amsouth effectively waived its entitlement to service of process on "an officer of the institution." Both of these arguments fail.

First, Hamlett misreads Virginia law. Under the law of Virginia, Amsouth, a foreign corporation doing business in Virginia, *must* designate a registered agent, *but* service on that agent is "not . . . necessarily the required means of serving a corporation." *See* Va. Code § 13.1-637(C) (Lexis Supp. 2002) (stating that provision of the code identifying registered agent as corporation's agent for service of process does not prescribe the required means of serving a corporation); *id.* § 13.1-763 (requiring each foreign corporation seeking to do business in Virginia to maintain a registered agent). Thus, service on Amsouth's registered agent does not necessarily satisfy Virginia requirements, let alone Rule 7004(h). Furthermore, since Virginia law *requires* Amsouth to designate a registered agent, the bank's action in doing so cannot be read as any sort of waiver of its right to receive service on "an officer of the institution" as provided for under the federal rule.

Moreover, even if Hamlett had not misread Virginia law, he could not prevail because, as Amsouth notes, "state law should not and does not preempt federal procedural law" in this context. *See* Fed. R. Bankr. P. 1001 ("The Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code."); *see also In re*

*Edmonston*, 107 F.3d 74, 76 n.2 (1st Cir. 1997) ("The Bankruptcy Rules 'govern' procedure in all bankruptcy proceedings unless inconsistent with either Title 11 or Title 28, United States Code."); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1241 (7th Cir. 1990) (holding that the Federal Rules of Bankruptcy Procedure apply to adversary proceedings "without regard to judicial forum"); *In re Mycro-Tek, Inc.*, 191 B.R. 188, 191 (Bankr. D. Kan. 1996) (finding that Rule 7004 supercedes the state rule for service of process).

Accordingly, we agree with the district court that the bankruptcy court did not abuse its discretion in vacating the default judgment. Rule 7004(h) clearly requires service on an "officer" of an insured depository institution, and we see no basis for concluding that a registered agent should be treated as an "officer" of the institution under the Rule.

III.

As to the merits of the adversary proceeding, Hamlett argues that the district court erred in refusing to conclude that the "disallowance" of Amsouth's claims in the bankruptcy proceedings voided the liens held by Amsouth on Hamlett's property. The parties agree that Amsouth did not timely file its claims and that this provided the *only* basis for the bankruptcy court's initial decision to void the liens.

Section 506(d)(2) of the Bankruptcy Code provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless —
>
> > (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C.A. § 506(d)(2) (West 1993). Hamlett contends that Amsouth's claims were not "allowed secured claims" under § 506(d)(2) and "therefore, the liens are void." Read literally and in isolation, this provision provides some support for Hamlett's argu-

ment. But established Supreme Court and circuit precedent render his argument untenable.

More than a century ago, the Supreme Court held that a bankruptcy discharge of a secured creditor's claim does not affect the status of the creditor's underlying lien on the debtor's property. *See Long v. Bullard*, 117 U.S. 617, 620-21 (1886) ("Here the creditor neither proved his debt in bankruptcy nor released his lien. Consequently his security was preserved notwithstanding the bankruptcy of his debtor."). Over the years, the Court reiterated this holding. *See, e.g., Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 582-83 (1935) (holding that mortgage was not disturbed by bankruptcy proceedings); *United States Nat'l Bank v. Chase Nat'l Bank*, 331 U.S. 28, 33 (1947) (stating that a secured creditor "may disregard bankruptcy proceedings, decline to file a claim, and rely solely upon his security if that security is properly and solely in his possession").

Congress's overhaul of the Bankruptcy Code in 1978 raised some questions as to whether this well-established pre-Code principle survived. *See* Bankruptcy Reform Act of 1978, Pub. L. 95-598, 92 Stat. 2549. The new Code itself did not expressly articulate this principle, and the language of the Code, including § 506(d) on which Hamlett relies here, certainly could be read to have eliminated it.[1] In 1992, however, resolving a circuit conflict on the issue, the Supreme Court concluded that despite this language, it was "not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). Accordingly, over a strong dissent relying on the "plain language" of the Code, six members of the Court held that this pre-Code principle survived the 1978 enactment: under the new Code, as before, "the creditor's lien stays with the real property until the foreclosure." *Id.*

---

[1]Congress amended section 506(d) in 1984, adding the new section 506(d)(2) to clarify that mere failure to file a proof of claim in a bankruptcy proceeding was not a proper basis for avoiding the underlying lien that secured a disallowed claim. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 93-353, § 448(b), 98 Stat. 374.

In doing so, the Court expressly rejected an argument, like Hamlett's, that a creditor's decision to participate in the bankruptcy proceedings puts the value of that creditor's valid underlying lien at risk. The Court reasoned that since a creditor "surely" would retain a lien if he "stayed aloof from the bankruptcy proceeding," it saw "no reason why his acquiescence in that proceeding would cause him to experience a forfeiture of the kind the debtor proposes." *Id.* at 417-18.

The case at hand, of course, does not involve the precise issue resolved in *Dewsnup*. *See id.* at 412 (holding that § 506(d) does not permit "a debtor to 'strip down' a creditor's lien on real property to the value of the collateral, as judiciously determined, when that value is less than the amount of the claim secured by the lien"). But the rationale in *Dewsnup* and its explicit embrace of the principle that a lien passes through bankruptcy proceedings unaffected severely undermine Hamlett's argument.

Moreover, in a pre-*Dewsnup* case, the Seventh Circuit employed the same principle in rejecting an argument identical to Hamlett's. *See In re Tarnow*, 749 F.2d 464, 466 (7th Cir. 1984). In that case, the creditor had a valid security interest on the debtor's crops and equipment. The debtor filed for bankruptcy, and two months after the bar date for filing proofs of claim, the creditor filed its proof of claim. Because of the late filing, the bankruptcy court not only disallowed the claim, but also extinguished the creditor's lien. *Id.* at 464. The creditor appealed only the judgment avoiding its lien. The Seventh Circuit reversed, holding that the failure of the creditor to timely file its claims in the bankruptcy proceedings did not extinguish the underlying lien. *Id.* at 466-67.

Although the *Tarnow* court recognized that "read literally" § 506(d) seemed to support the debtor's position, it concluded that the well-established rule "permitting liens to pass through bankruptcy unaffected" supported the conclusion that the "intended meaning" of 506(d) is "to allow the bankruptcy court to determine whether a creditor has a valid secured claim, and if he does not to make the lien — the security — fall with the claim." *Id.* at 466. In other words, § 506(d) only empowers the bankruptcy court to void liens supporting disallowed claims if it judges those liens to be invalid in substance.

This view comports with the 1984 amendment to § 506(d), adding § 506(d)(2), which clarifies that Congress did not intend for a perfectly valid lien to be extinguished any time a creditor's claim on the bankrupt estate is disallowed. Of course, that provision does not explicitly refer to claims that are disallowed merely because they were filed after the bar date. But we conclude, following the reasoning set forth in *Tarnow*, that the failure to file a timely claim, like the failure to file a claim at all, does not constitute sufficient grounds for extinguishing a perfectly valid lien. *Id.* at 467. The contrary result, which Hamlett seeks here, would lead to considerable inequity:

> The destruction of a lien is a disproportionately severe sanction for a default that can hurt only the defaulter. . . . While no one wants bankruptcy proceedings to be cluttered up by tardy claims, the simple and effective means of discouraging them is to dismiss the claim (that is, the claim against the bankrupt estate, as distinct from the claim against the collateral itself), out of hand, because it is untimely. . . . If an ordinary plaintiff files a suit barred by the statute of limitations, the sanction is dismissal; it is not to take away his property. And a lien is property.

*Id.*, 749 F.2d at 465-66.

*Tarnow* has been cited and followed by numerous courts. The Eighth Circuit, for example, has relied on it in similarly interpreting § 506(d)(2) to hold that a bankruptcy court erred in "disallowing and extinguishing the . . . lien because of the untimely filing." *In re Be-Mac Transp. Co., Inc.*, 83 F.3d 1020, 1027 (8th Cir. 1996); *see also In re Thomas*, 883 F.2d 991, 997 (11th Cir. 1989) (holding creditor's "lien not voided by the fact that the debtors passed the interest they had in the mobile home through bankruptcy"). No court has held to the contrary in the Chapter 7 context.[2]

---

[2]Of course, *Tarnow*, along with the general proposition that liens survive bankruptcy unaffected, has been distinguished in cases involving reorganization plans under Chapter 11 of the Bankruptcy Code where the lienholder participated in the plan and the plan did not expressly preserve the lien. *See, e.g.*, *In re Reg'l Bldg. Sys., Inc.*, 254 F.3d 528, 533 (4th Cir.

Until today, we have not addressed a situation precisely like that in *Tarnow*. But we have, in a case concerning the effect of a Chapter 13 plan upon a creditor's liens, quoted with approval the *Tarnow* reasoning:

> Section 506(d) voids a lien that secures a claim against the debtor, *unless* the claim is not treated as an allowed secured claim simply because the creditor has elected not to file a proof of claim. . . . Subsection (2) was intended "to make clear that the failure of the secured creditor to file a proof claim is not a basis for avoiding the lien on the secured creditor."

*Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93-4 (4th Cir. 1995) (quoting *In re Tarnow*, 749 F.2d at 467) (footnote omitted) (emphasis in original). We there explained that "[a] bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property." *Cen-Pen*, 58 F.3d at 92. Thus, even though a secured creditor may lose its right to participate in the distribution of the bankrupt estate (by virtue of having its claims against the bankrupt estate disallowed), the disallowance of its claim does not necessarily void its lien.

Hamlett acknowledges that "[u]nder 506(d)(2) . . . Amsouth's lien[s] would have passed through bankruptcy if Amsouth had not filed a claim," but insists that "the facts of this case establish that Amsouth filed a claim which was disallowed and, if the plain language of 11 U.S.C. § 506(d) is applied, Amsouth's lien is void." His only response to the precedent cited above is to assert that it is "wrong." Whatever the philosophical merits of Hamlett's contention, they do not persuade us to disregard a principle expressly recognized

---

2001) (extinguishing creditor's lien which was not expressly preserved by a Chapter 11 reorganization plan); *In re Penrod*, 50 F.3d 459, 463-64 (7th Cir. 1995) (extinguishing creditor's pre-existing lien after confirmation of Chapter 11 reorganization plan that did not expressly preserve the lien); *In re Wise*, 41 B.R. 51, 52 (Bankr. W.D. La. 1984) (voiding a lien held by a secured creditor whose claim had been disallowed because of untimely filing in Chapter 11 bankruptcy proceeding).

by the Supreme Court and embraced by one of our own recent cases to arrive at a disposition that would create a circuit conflict.

Accepting Hamlett's argument would mean that although a lien remains intact despite a creditor's total failure to file a claim, a lien would be extinguished whenever a creditor filed a valid claim after the bar date; *i.e.*, attempted compliance with the Bankruptcy Code's procedure for filing a claim would place an underlying lien at risk, while complete refusal to participate in the bankruptcy proceedings does not. Given the Supreme Court's holding in *Dewsnup*, 502 U.S. at 417, that "liens pass through bankruptcy unaffected," even if § 506(d)(2) could be read to require the result Hamlett seeks, adopting that interpretation would produce "a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

Accordingly, like the district court, we conclude that the bankruptcy court correctly found that Amsouth's liens were not extinguished by its failure to timely file its claims against the bankrupt estate.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.