IN RE: Kevin J. KOHOUT and Susan R. Kohout, Debtors.

In re: Kevin J. Kohout and Susan R. Kohout, Plaintiffs,

v.

Nationstar Mortgage, LLC, Defendant.

Case No.: 10–60999
Adv. Pro. No.: 15–80004

United States Bankruptcy Court, N.D. New York.

Signed November 10, 2016

---

THE LAW OFFICES OF STEVEN R. DOLSON, PLLC, Steven R. Dolson, Esq., Attorneys for Plaintiffs Kevin J. Kohout and Susan R. Kohout, 126 North Salina Street, Suite 3B, Syracuse, New York 13202

SANDELANDS EYET LLP, Laurence P. Church, Esq., Attorneys for Defendant Nationstar Mortgage, LLC, 1545 U.S. Highway 206, Suite 304, Bedminster, NJ 07921

## MEMORANDUM–DECISION AND ORDER

DIANE DAVIS, United States Bankruptcy Judge

Plaintiffs Kevin J. Kohout and Susan R. Kohout ("Debtors") commenced this adversary proceeding seeking a judgment to declare the mortgage lien held by Defendant Nationstar Mortgage LLC ("Nationstar") void by operation of 11 U.S.C. § 506(d).[1] The parties have stipulated to all material facts and agree that the question to be decided by the Court is purely a question of law. Pending before the Court for determination are the parties' competing motions for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56, made applicable to this adversary proceeding by virtue of Federal Rule of Bankruptcy Procedure ("FRBP") 7056. (ECF Adv. Pro. Nos. 13 & 14.)

## JURISDICTION

The Court has jurisdiction of this case and adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334(b). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(k). This Memorandum–Decision and Order constitutes the Court's findings of fact and conclusions of law to the extent required by FRBP 7052.

## FACTS

The following facts are derived from the parties' Joint Statement of Facts ("JS") filed pursuant to Local Bankruptcy Rule 7056–1 on March 18, 2016. (ECF Adv. Pro. No. 13.)[2] On April 14, 2010, Debtors filed a joint Voluntary Petition for Chapter 13 relief (ECF No. 1; JS ¶ 3), wherein Debtors listed a secured debt owed to Resmae Mortgage Corporation ("Resmae") in the amount of $106,810.00. (JS ¶ 4.) On or about January 26, 2007, Debtors became obligated to Resmae pursuant to a Promissory Note in the amount of $106,250.00 (the "Note"), which was secured by a Mortgage executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Resmae, on the same date and for the same principal amount (the "Mortgage") (the loan evidenced by the Note and Mortgage is referred to herein as the "Mortgage Loan"). (JS ¶¶ 20–21.) The Mortgage was recorded in the Office of the Delaware County Clerk on February 26, 2007, as a first priority mortgage lien on Debtors' residence located at 16200 Main Street, a/k/a 16200 State Highway 23, Davenport, New York 13750

---

1. All further section references herein relate to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101–1532 (2012).

2. Documents filed in the adversary proceeding will be referred to herein as "ECF Adv. No. ——." Documents filed in Debtors' main bankruptcy case will be referred to herein as "ECF No. ——."

(the "Property"). (JS ¶ 21.) On June 2, 2009, the Mortgage was assigned by MERS, as nominee for Resmae, to Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for the Lehman ABS Mortgage Loan Trust Mortgage Pass–Through Certificates, Series 2007–1, by way of an Assignment of Mortgage that was recorded in the Delaware County Clerk's Office on July 29, 2009. (JS ¶ 22.)

On April 14, 2010, Debtors filed a Chapter 13 Plan, which identified mortgage arrears of $ 14,000.00 due and owing to Resmae and required Debtors to make ongoing post-petition mortgage payments directly to Resmae (the "Plan"). (ECF No. 2; JS ¶¶ 5–6.) On June 14, 2010, Bridgefield Mortgage Corporation (f/k/a/ Resmae) (hereinafter "Bridgefield") filed Proof of Claim Number 13 ("Claim 13") in Debtors' main bankruptcy case alleging a debt due of $ 127,123.67 secured by the Property, inclusive of an arrearage claim in the amount of $ 19,665.63. (JS ¶ 8.) On August 4, 2010, the Court issued an Order Confirming Debtors' Plan without objection. (ECF No. 11.) On September 16, 2010, Aurora Bank, FSB ("Aurora") filed a transfer of claim other than for security in Debtors' main bankruptcy case, transferring Claim 13 from Bridgefield to Aurora. (ECF No. 12; JS ¶ 12.) On October 14, 2010, the Chapter 13 Trustee filed a Notice of Claims Filed in Debtors' main bankruptcy case, which included Claim 13. (ECF No. 15; JS ¶ 9.)

On December 3, 2010, Debtors filed an objection to Claim 13 on the bases that the original claimant, Bridgefield, failed to include supporting documentation as required by FRBP 3001(d) proving that it held a secured interest in the Property and, further, that the arrearage amount was overstated. (ECF No. 20; JS ¶ 10.) On January 27, 2011, upon proof of proper service by Debtors upon Bridgefield and

Aurora, the Court issued an Order disallowing Claim 13 (the "Claim Disallowance Order") on default that provided that Claim 13 should not "share in any dividends paid to creditors" in Debtors' case. (ECF No. 26.) The Claim Disallowance Order specifically stated, *inter alia,* that "[n]o opposition was filed and no hearing was held." (JS ¶ 11.)

On April 25, 2011, Aurora filed a motion for relief from stay in Debtors' main bankruptcy case (ECF No. 30; JS ¶ 13), but it withdrew the same on July 22, 2011 (ECF No. 35; JS ¶ 14). On May 21, 2012, Debtors filed an Amended Summary of Schedules in their main bankruptcy case, which listed secured liabilities totaling $ 120,-203.20. (ECF No. 48; JS ¶ 15.) On June 29, 2012, the Mortgage was further assigned by Aurora to Nationstar by way of an Assignment of Mortgage. (JS ¶ 24.) On July 15, 2012, a transfer of claim other than for security was filed in Debtors' main bankruptcy case, transferring Claim 13 from Aurora to Nationstar. (ECF No. 50; JS ¶ 16.) On June 9, 2015, the Court issued an Order discharging Debtors in their main bankruptcy case. (ECF No. 86; JS ¶ 19.)

Nationstar is currently in possession of the original Note, endorsed in blank. (JS ¶ 25.) Nationstar's business records reflect that Debtors defaulted on the Mortgage Loan by failing to tender the monthly mortgage payment due June 1, 2009, and each payment due thereafter. (JS ¶ 26.) Nationstar's business records also reflect that the default has not been cured and there remains an unpaid principle balance of $ 108,792.20 due on the Mortgage Loan, together with interest, escrow advances, corporate advances, costs and fees. (JS ¶ 27.) The parties agree that Claim 13 is not based on either a domestic support obligation or on reimbursement or contri-

bution of any entity of a kind described in 11 U.S.C. § 502(e).

## ARGUMENTS

Debtors' argument is based on a straightforward textual reading of § 506(d), for which Debtors find support in Ninth Circuit Court of Appeals precedent in the case of *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477 (9th Cir. 2015) (holding that the bankruptcy court properly voided a creditor's lien under § 506(d) where the creditor timely filed its proof of claim and received timely service of the debtors' claim objection but did not contest the disallowance of its claim, based on the rational that under § 506(d), if a creditor's claim has not been "allowed" in the bankruptcy proceeding, then a lien securing the claim is void). Debtors contend that Beneficial's first priority mortgage lien is void pursuant to § 506(d) because Beneficial does not hold an "allowed secured claim" following this Court's issuance of the Claim Disallowance Order, which Beneficial did not appeal or, until now, otherwise seek to undo.[3] Further, because the parties have stipulated that the exceptions to § 506(d) do not apply in this case, Debtors assert that they are entitled to judgment as a matter of law.

Nationstar conversely argues that case law and longstanding bankruptcy tenets do not support this overly literal reading of § 506(d) and that proper application of this Bankruptcy Code section commands judgment in its favor because Debtors cannot substantively challenge Nationstar's valid and properly perfected first priority mortgage lien. Nationstar directs the Court's attention to a line of cases handed down by the United States Courts of Appeals for the Fourth, Seventh, and Eighth Circuits wherein the circuit courts respectively concluded that bankruptcy courts may not use § 506(d) to void liens of creditors whose underlying claims have been disallowed on the sole basis that their proofs of claim were untimely filed. *Shelton v. CitiMortgage, Inc. (In re Shelton)*, 477 B.R. 749 (8th Cir. BAP 2012); *Hamlett v. Amsouth Bank (In re Hamlett)*, 322 F.3d 342 (4th Cir. 2003); *In re Tarnow*, 749 F.2d 464 (7th Cir. 1984). These circuit courts reasoned that voiding liens merely because the creditor did not timely file a claim violates the longstanding principle that valid liens pass through bankruptcy unaffected. Employing a similar rationale, Nationstar asserts that it would be nonsensical to apply § 506(d) to penalize a secured creditor whose lien is unquestionably valid under state law by voiding such lien where the creditor chose to participate in the debtor's bankruptcy case by filing a timely proof of claim but then inadvertently failed to defend the same. Just as § 506(d) has been held to be inoperative where a creditor's claim is disallowed on the basis of untimeliness, Nationstar contends that it must also be held to be inoperative where a claim is disallowed on a default basis because of a procedural deficiency rather than either on the merits as provided under § 502 or on account of a substantive defect regarding the creditor's lien.

Under Nationstar's interpretation of § 506(d), the phrase "allowed secured claim" must be construed more narrowly. In support of its interpretation that § 506(d)'s lien avoidance mechanism requires a prerequisite ruling regarding either the claimant's rights or the underlying lien itself, Nationstar cites, among others, the bankruptcy court case of *In*

---

**3.** In its motion for summary judgment, Beneficial includes an alternate request for relief under § 502(j). Unless the penultimate issue raised by this adversary proceeding is decided adversely to Beneficial, the Court need not consider Beneficial's § 502(j) request.

*re Oudomsouk,* 483 B.R. 502 (Bankr. M.D. Tenn. 2012) (denying the debtor § 506(d) lien avoidance relief where the creditor's claim was disallowed on default but where there was "no attack ... of the traditional type tied to existence, legitimacy, perfection, priority or extent of a lien."). According to Nationstar, were the Court to hold otherwise, it would create an absurd situation where a creditor could lose its lien rights whenever it files a proof of claim that it subsequently fails to defend for whatever reason, but not lose its lien rights when it files no claim at all. Nationstar therefore urges the Court to reject what it describes as Debtors' conclusory argument that its lien must be declared null and void under § 506(d) and, in keeping with established Supreme Court precedent, to grant judgment in Nationstar's favor as a matter of law.

## DISCUSSION

▮ The court analyzes the parties' competing motions for summary judgment under the well-established summary judgment standard. FED. R. CIV. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Through summary adjudication a court is empowered to dispose of those claims that do not present a 'genuine issue as to any material fact,' FED. R. CIV. P. 56, and for which a trial would be 'an empty and unnecessary formality.'" *Belnick, Inc. v. TBB Global Logistics, Inc.,* 106 F.Supp.3d 551, 558 (M.D. Pa. 2015) (quoting *Univac Dental Co. v. Dentsply Int'l, Inc.,* 702 F.Supp.2d 465, 468 (M.D. Pa. 2010)).

Summary judgment is appropriate here because the parties' motions rest on an undisputed factual record and a narrow question of law, namely, whether the lien avoidance mechanism of § 506(d) applies to void liens whose claims are disallowed on a procedural rather than substantive basis. More specifically, the Court considers whether Nationstar's lien is void by operation of § 506(d) because Claim 13, now held by Nationstar, was disallowed through a default notice procedure on the basis of insufficient documentation.

▮ Both parties recognize the long-standing rule that, unless avoided by the Court, a creditor's lien will pass through bankruptcy unaffected. *See Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The parties also acknowledge the well-established principle that a secured creditor may decline to participate in the bankruptcy process completely without jeopardizing its underlying lien. *See, e.g. United States Nat'l Bank v. Chase Nat'l Bank,* 331 U.S. 28, 33, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 582–83, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). They disagree, however, about whether § 506(d) has any application to the facts of this case where Nationstar's predecessor filed but later failed to defend its claim in the face of a procedural objection.

This seemingly simple legal question turns out to be of greater complexity as it involves the interrelationships among multiple Bankruptcy Code provisions, which the Court will analyze step by step. The Court's analysis necessarily begins with the claims allowance process. Bankruptcy Code § 501(a) provides that a creditor "may file a proof of claim." 11 U.S.C. § 501(a). Section 502(a), in turn, provides that "[a] claim or interest, proof of which is filed under section 501 ..., is deemed

allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Pursuant to FRBP 3001(c), in the case of an individual debtor, each secured claim collateralized by a security interest in the debtor's principal residence shall be accompanied by supporting information. FED. R. BANKR. P. 3001(c). FRBP 3001(f) clarifies the evidentiary effect of a claim that is compliant with the Rule by stating, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f).

■■■ Accordingly, when a proof of claim fails to comply with the requirements of FRBP 3001(c), the claim will not be considered prima facie proof as to its validity or amount. *In re Reyna*, 2008 WL 2961973, at *3, 2008 Bankr. LEXIS 2309, at *9 (Bankr. W.D. Tex. July 28, 2008) (collecting cases). In such a case, the debtor need not present evidence to overcome the prima facie validity of the claim but rather need only object to the claim pursuant to the applicable rules, or statute. *Id.* (citing *McGee v. O'Connor*, 153 F.3d 258, 260–61 (5th Cir. 1998)): "Thus, a lack of documentation required by Rule 3001(c) shifts the burden to the creditor 'to prove the validity, ownership, and amount of [its] claim in the same manner as if [it] were suing the debtors in state court." *Id.* (quoting *In re White*, 2008 WL 269897, at *6, 2008 Bankr. LEXIS 167, at *6 (Bankr. N.D. Tex. Jan. 29, 2008)).

■■■ A secured creditor is not required to file a proof of claim and its failure to do so will not result in the loss of its lien rights because, after the bankruptcy case is concluded, the secured creditor may pursue the collateral to satisfy its lien. *In re Oudomsouk*, 483 B.R. at 507–08. If, however, a secured creditor elects to file a proof of claim, the debtor may substantively challenge such claim under § 502. "The

exclusive statutory bases for disallowing a claim are found in § 502 and do not include a lack of documentation." *In re Barnes*, 2008 Bankr. LEXIS 1932, at *6 (Bankr. N.D. Fla. June 6, 2008) (collecting cases). Even where a party in interest objects to a filed claim, the court "shall allow" the claim except to the extent enumerated in § 502. 11 U.S.C. §.502.

■■■ Bankruptcy Code § 502(b)(1), for example, requires disallowance of any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision recognizes that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available to the debtor inside bankruptcy, which is consistent with the settled principle that creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation. *Travelers Cas. & Sur. Co. of Am. v. PG & E*, 549 U.S. 443, 450, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) ("the 'basic federal rule' in bankruptcy is that state law governs the substance of claims"). Generally, if a claim is enforceable under applicable state law, it will be allowed in bankruptcy unless it is expressly disallowed. As the Supreme Court stated in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), "[p]roperty rights are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding," *id.* at 55, 99 S.Ct. 914. Pursuant to § 506(a), "an allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of

such creditor's interest in such property ...." 11 U.S.C. § 506(a). If a claim is disallowed in whole or in part, it cannot be a secured claim under § 506(a) to the extent of the disallowance and must be bifurcated into separate secured and unsecured claims for purposes of its treatment inside bankruptcy. Debtors did not cite to a specific provision of § 502(b) in their claim objection and they concede that they could not have done so because Nationstar is a proper mortgagee with respect to the Property. Accordingly, the Claim Disallowance Order provided only that Claim 13 should not "share in any dividends paid to creditors" in this case.

Once a secured claim is disallowed under § 502, § 506(d) is triggered. Bankruptcy Code § 506, titled "Determination of Secured Status," provides in relevant part:

(d) To the extent that a lien secured a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

While case law addresses situations where a creditor fails to file a proof of claim or fails to timely file a proof of claim, there is no controlling decision on the precise issue before this Court. Notwithstanding the statutory framework set forth above, however, Debtors ask the Court to adopt the reasoning of the bankruptcy court, as affirmed, and espoused by the Ninth Circuit Court of Appeals in *In re Blendheim*. In that case, the creditor filed a secured claim, together with a deed of trust but without a promissory note. The debtors objected and alleged that a copy of the promissory note they had previously received appeared to bear a forged signature. The creditor failed to respond to the debtors' objection, which the court granted. The debtors then filed an adversary proceeding seeking to void the creditor's first-position lien and more than a year passed before the creditor, at the request of the Court, sought to set aside the claim disallowance order. The Court denied the creditor's motion. The Court then granted the debtors motion for summary judgment in the adversary proceeding. In affirming that decision, the Ninth Circuit Court of Appeals reasoned as follows:

Where a claim is timely filed and objected to, [rather than never filed or late-filed and automatically disallowed so as to trigger the statutory exception to lien avoidance codified at § 506(d)(2) ], disallowance is not automatic. This case is a good example: HSBC timely filed its proof of claim, received service of the Blendheims' objection, and then had a full and fair opportunity to contest the disallowance of its claim—it simply chose not to. Thus, while voiding a lien securing an untimely filed claim might be considered a 'disproportionately severe sanction' for untimeliness, *In re Tarnow*, 749 F.2d at 465, voidance is not so severe a sanction in a case like this one, where the bankruptcy court disallowed the claim because, as the bankruptcy court put it, HSBC 'just slept on its rights' and refused to defend its claim. HSBC refused to defend its lien after it was challenged by the Blendheims for failure of proof and because their copy allegedly bore a forged signature. In these circumstances, HSBC's failure to respond is more akin to a concession of error than a failure to file a timely claim. HSBC simply forfeited its claim.

*In re Blendheim*, 803 F.3d at 491. Here, Debtors rely on the Ninth Circuit holding that the "facts present[ed] a straightforward application of § 506(d)'s textual command," *id.* and "[a]lthough voiding HSBC's lien upon disallowance may seem a harsh consequence, ... Congress directed such an outcome under § 506(d)." *Id.* at 490.

In assessing *In re Blendheim*, however, this Court takes note of the fact that HSBC's secured claim and resultant lien in that case were likely defeatable on substantive grounds because of the alleged forgery and lack of a valid promissory note. It is unclear whether HSBC in fact forfeited its claim because of a substantive defect, in which case the outcome unquestionably would have been proper because the claim could have been disallowed on the merits under § 502(b), or because HSBC simply ignored the bankruptcy proceedings for such a long period of time. Like the creditor in *In re Blendheim*, Nationstar in this case did not fail to appear or defend the claim objection. Unlike that creditor, however, Nationstar did not repeatedly ignore court directives to file a motion to reconsider or to lodge an appropriate request for relief. As such, the Court views Nationstar's inaction in the face of the claim objection as deliberate in reliance on the longstanding rule that a creditor can ignore the claims allowance process and later pursue its in rem rights, especially given that chapter 13 offers various safeguards that § 506(d) does not afford in a chapter 7 context. For example, § 1322(b)(2) prohibits a chapter 13 debtor from modifying the rights of a creditor whose claim is secured only by an interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Under § 1322(b)(5), a chapter 13 debtor may cure any pre-petition default and maintain payments while the case is pending, 11 U.S.C. § 1322(b)(5), or, if the last payment is due during the term of the plan, modify

the claim and pay the claim in full during the plan pendency notwithstanding non-bankruptcy law, 11 U.S.C. § 1322(c)(2). While these sections of the Bankruptcy Code recognize that a secured creditor's lien rights may be altered, they also provide a number of safeguards to ensure that the secured creditor is treated fairly. Poignantly, the Supreme Court in *Dewsnup* stated that the creditor's lien stayed with the real property until foreclosure. Simply stated, lien rights are generally preserved rather than forfeited in bankruptcy.

This Court is not persuaded that either the bankruptcy court or the Ninth Circuit Court of Appeals got it right. While the plain language of § 506(d) appears to support Debtors' argument when read literally and in isolation, this Court, as does the Seventh Circuit Court of Appeals, rejects the proposition that disallowing a claim, on whatever ground, automatically voids the lien that secures it. *In re Tarnow*, 749 F.2d at 466. Further, the Court declines to read § 506(d) as a stand-alone basis for relief. Bankruptcy Code § 506(d)'s function is to void the lien securing collateral whenever the secured claim itself is disallowed under § 502. *Dewsnup*, 502 U.S. at 415–16, 112 S.Ct. 773. As the Seventh Circuit Court of Appeals has stated, "[a]ll that was sought to be accomplished [by Congress] was to allow the bankruptcy court to determine whether a creditor has a valid secured claim [under state law], and if he does not to make the lien–the security–fall with the claim." *In re Tarnow*, 749 F.2d at 466 (7th Cir. 1984). "This makes perfectly good sense; if you do not have a good secured claim, you do not have a valid lien (security for the claim)." *Id.*

 By referring to an "allowed" claim, § 506(d) implicitly recognizes that every claim that is filed must go through the claims allowance process set forth in

§ 502 before the claimant is entitled to participate in the distribution of estate assets. As stated above, "[t]he Court may decline to allow—or 'disallow'—a claim for a variety of reasons," *In re Blendheim*, 803 F.3d at 485) (citing 11 U.S.C. § 502), none of which include a lack of supporting documentation. "The fundamental purpose of the claims allowance process and the various rules for filing proofs of claim and allocating burdens of proof is to provide a fair and legitimate procedure for the proper determination of claims *on the merits*." *In re Crutchfield*, 492 B.R. 60, 68 (Bankr. M.D. Ga. 2013) (internal quotation marks and citation omitted) (emphasis supplied). Where, as here, the Court does not examine the substance of a creditor's claim or make a merit-based determination, it would be illogical and contrary to long-standing bankruptcy jurisprudence to deprive such creditor of its contractual in rem rights. In this case, Debtors admit that Nationstar is a legitimate mortgagee under state law with a properly perfected security interest in their Property.

Lien forfeiture is the exception rather than the rule under the Bankruptcy Code. *See In re Batista–Sanechez*, 502 B.R. 227, 230 (Bankr. N.D. Ill. 2013) (" 'Liens are property rights and the forfeiture of such rights is disfavored.' ") (quoting *Matter of Penrod*, 50 F.3d 459, 462 (7th Cir. 1995)). Although Congress has authorized the cancellation of a creditor's in rem interest in property, *In re Jerew*, 415 B.R. 303, 309 (Bankr. N.D. Oh. 2009), the Court notes that it has done so only on limited occasions and without equivocation. *See, e.g.*, 11 U.S.C. §§ 522(f) (enacted with the broad purpose of protecting the debtor's exempt property) and 544 (allowing a trustee to avoid liens that are not properly perfected). In such cases, Congress has done so overtly where a superior interest of the debtor trumped that of the creditor or where the lien itself was compromised. Bankruptcy Code § 506(d) should not be read differently or literally as an independent statutory basis for relief when in fact such application would accomplish an inconsistent result at odds with deep rooted historical bankruptcy principles.

## CONCLUSION

For the foregoing reasons, the Court concludes that § 506(d) may not be used as a vehicle to void a secured creditor's lien where the Court disallows the secured creditor's claim purely on procedural grounds. As the Seventh Circuit Court of Appeals stated in *Tarnow*, "[t]he destruction of a lien is a disproportionately severe sanction for a default that can only hurt the defaulter." Moreover, to rule otherwise would conflict with a holistic reading of the Bankruptcy Code and policy. The Court will issue a separate judgment consistent with this Memorandum–Decision and Order.

Accordingly, it is hereby

ORDERED, that Debtors' Summary Judgment Motion is DENIED; and it is further

ORDERED, that Nationstar's Summary Judgment Motion is GRANTED; and it is further

ORDERED, that Nationstar's request for relief under § 502(j) is rendered moot; and it is further

ORDERED, that the Adversary Complaint is dismissed on its merits.

IT IS SO ORDERED.