Kristine AULBACH, Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al., Defendants

And Coordinated Cases:

Erickson, Charlotte

v.

Experian Information Solutions, Inc., et al., 16–cv–06331 VC

Fizone, Janice

v.

Experian Information Solutions, Inc., et al., 16–cv–06362 VC

Case No. 16–cv–05716–VC

United States District Court, N.D. California.

Signed 05/04/2017

Elliot Wayne Gale, Sagaria Law, P.C., Roseville, CA, for Plaintiff.

Celia M. Jackson, San Francisco, CA, Heather Nicole Fugitt, Palo Alto, CA, Katelyn Miriam Phillips, San Francisco, CA, Thomas P. Quinn, Jr., Nokes & Quinn APC, Laguna Beach, CA, Chelsea Lynn Diaz, William Hayes Edmonson, Doll Amir and Eley LLP, Los Angeles, CA, Liana Mayilyan, Simmonds and Narita LLP, San Francisco, CA, for Defendants.

### ORDER GRANTING MOTIONS TO DISMISS

VINCE CHHABRIA, United States District Judge

When someone's debt is folded into a confirmed Chapter 13 plan of reorganization, the nature of that debt changes. The plaintiffs in these coordinated cases believe the change is material to creditworthiness

and must therefore be reflected in their credit reports. They allege that the way credit reporting agencies describe the debts following a Chapter 13 confirmation fails to reflect that change, in violation of the Fair Credit Reporting Act.

The defendants have filed motions to dismiss, primarily on the ground that there is no need to change the way a debt is reported following Chapter 13 confirmation. The defendants are in excellent company: at least 11 judges in the Northern District of California have accepted some version of their argument. But now the plaintiffs have some meager company of their own. This Court concludes that the failure to report changes in the nature of debt stemming from a Chapter 13 confirmation can indeed violate the Fair Credit Reporting Act, and that the plaintiffs have stated a claim in this regard.

However, the defendants fleetingly assert a second ground in support of dismissal, namely that the plaintiffs have failed to plead that the violations are "willful" within the meaning of the statute. The plaintiffs have not responded to that argument in their oppositions, and they may indeed have failed adequately to allege that the violations are willful. Nor do they allege actual damages, as would be necessary for the defendants to be liable under the statute absent a finding of willfulness. Accordingly, the complaints are dismissed with leave to amend.

## I.

When an individual debtor wants to seek bankruptcy protection, she must decide whether to file under Chapter 7 or Chapter 13. In a Chapter 7 proceeding, "a bankruptcy trustee immediately gathers up and sells all of a debtor's nonexempt assets in the estate, using the proceeds to repay creditors in the order of the priority of their claims." *In re Blendheim*, 803 F.3d 477, 485 (9th Cir. 2015). Any wages earned or assets acquired by the debtor after she files her Chapter 7 petition do not become part of the bankruptcy estate. *Id.* At the end of the process, any remaining debts owed by the person who filed for bankruptcy may be discharged. *Id.*

A Chapter 13 proceeding is different. When a debtor files under Chapter 13, her assets are not liquidated. Instead, her income going forward is used to pay creditors. The debtor submits to the bankruptcy court a proposed plan in which she agrees to make payments to creditors over time—typically three to five years. *Id.* The plan may call for the debtor to repay a particular creditor the full amount owed, a portion of the amount owed, or none of the amount owed, depending on the value of the debtor's assets, her income, and the types of debts she has. Soon after submitting her proposed plan, the debtor starts making payments to a trustee in the amount proposed by her plan. 11 U.S.C. § 1326(a)(1).

As part of the Chapter 13 proceedings, the creditors have an opportunity to weigh in on the proposed plan before it is approved. *Id.* § 1324(a) ("[T]he court shall hold a hearing on confirmation of the plan. A party in interest may object to confirmation of the plan."). This includes the opportunity to argue that the plan should require the debtor to pay the creditor a higher portion of the original debt owed. *See id.* § 1325; *see also* Fed. R. Bankr. P. 3015(f).

The bankruptcy court's decision to approve the Chapter 13 plan is referred to as "confirmation." Following confirmation, the trustee distributes to creditors the payments the debtor has made up until that point, and continues distributing payments as the debtor continues making them. 11 U.S.C. § 1326. During this time,

a creditor has no recourse to collect on the debt beyond receiving payments from the trustee. The creditor is prohibited from taking any other action against the debtor for payment of amounts past due. In effect, there is no longer a past due amount, because the debt has been restructured by the confirmation, so that the debtor need only make payments going forward (with those payments sometimes being lower than those she was originally required to make).

If the debtor succeeds in making payments to the trustee as scheduled by the confirmed plan during the 3–5 year period, any remaining debt owed to creditors is discharged. If the debtor fails to make the payments as scheduled by the plan, the Chapter 13 proceedings can be dismissed, in which case the debts to the creditors revert to their prior status—the debtor once again owes his creditors the full amount outright. *Id.* § 1307; *Blendheim*, 803 F.3d at 487. Or the Chapter 13 proceedings can be converted to a Chapter 7 bankruptcy. Upon conversion to Chapter 7, the debtor's assets automatically become property of the bankruptcy estate and the process of liquidating and distributing the assets begins. 11 U.S.C. § 348(f).[1]

## II.

Counsel for the plaintiffs have filed literally hundreds of similar lawsuits in the Northern District of California. Each lawsuit is by a plaintiff who had a Chapter 13 plan confirmed by a bankruptcy court. Those cases have been, and continue to be, assigned randomly to different judges throughout the district.

The lawsuits filed in this district allege violations of the Fair Credit Reporting Act, which requires credit reporting agencies, as well as creditors who provide debt information to those agencies, to conduct investigations of disputed information in a consumer's credit report and take steps to correct inaccuracies. 15 U.S.C. §§ 1681i, 1681s–2; *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). Many of the lawsuits are brought against both credit reporting agencies and certain creditors of a given plaintiff. The allegation is that the plaintiffs notified credit reporting agencies that their debts needed to be reported differently as a result of their Chapter 13 plan confirmations, and that the credit reporting agencies failed to investigate the issue or do anything to correct the inaccuracies. The plaintiffs allege as well that the creditors who reported the debts to the credit reporting agency (dubbed "data furnishers" by the statute) failed to conduct reasonable investigations of the alleged inaccuracies after credit reporting agencies notified them of the plaintiffs' disputes. The defendants in these cases contend there is no obligation to change the way a debt is reported once it gets folded in to a Chapter 13 confirmation, because reporting debts according to their original terms is not "inaccurate."

A total of 11 of these cases have been randomly assigned to the undersigned judge. Some of the plaintiffs alleged that their debts to specified creditors had been reduced by their Chapter 13 confirmations, but that the defendants failed to report the change. Other plaintiffs alleged that their debts to certain creditors were not reduced (that is, the Chapter 13 plan still called for them to pay 100% of specified

---

1. The Bankruptcy Code provides that, upon conversion from a Chapter 13 proceeding, any default will be restored to its pre-bankruptcy status, "unless a bankruptcy default has been fully cured under the plan at the time of conversion." 11 U.S.C. § 348(f)(1)(C). Additionally, the valuations of allowed secured claims are "reduced to the extent they have been paid in accordance with the chapter 13 plan." *Id.* § 348(f)(1)(B).

debts), but that the defendants failed to report other material changes that resulted from the confirmation (for example, that there were no longer any "past due" amounts). Several defendants, including Experian, Equifax, and Credit One, filed motions to dismiss in six of the cases, and a hearing was scheduled for April 13, 2017.

As the hearing on the motions to dismiss drew nearer, the settlements started pouring in. In three cases in which motions to dismiss were pending, the plaintiff settled with all defendants. In the other three cases, the plaintiff settled with all but one defendant—Equifax, a credit reporting agency. Accordingly, there are three remaining motions to dismiss, all brought by Equifax, against plaintiffs Kristine Aulbach, Charlotte Erickson, and Janice Fizone.

## III.

Equifax argues that credit reporting agencies have no obligation to change the way they report debts in the wake of a Chapter 13 plan confirmation. It contends that even if a debtor's immediate obligations are changed by the confirmation, those obligations might someday revert to their pre-confirmation status. If this happens, the debtor will once again owe her entire debts outright, even if she was only required to make partial payments under the Chapter 13 plan. And the debtor might again immediately owe the "past due" amounts owed pre-confirmation, even if the obligation relating to those past due amounts had been extinguished under the Chapter 13 plan. Therefore, Equifax argues, it is still "accurate" within the meaning of the Fair Credit Reporting Act to report the debts the way they were reported before the confirmation.

It's true that a debtor who obtained a Chapter 13 confirmation might end up losing the protections of her plan, since most of the protections are contingent on complying with the plan's payment terms over the next 3–5 years.[2] But that's not the point. The point is that the nature of the debt changes as a result of a Chapter 13 confirmation, contingency notwithstanding. And the plaintiffs have plausibly alleged that the change is significant enough that credit reporting agencies violate the Fair Credit Reporting Act by failing to investigate it and modify their records accordingly.

Take, for example, a case where the debtor's obligation to creditors is significantly reduced by the Chapter 13 plan. Say a debtor owed a bank $1,000 outright before filing. At that time, the nature of the debt is simple: the debtor is obligated to pay the bank $1,000. But say the plan called for the debtor to pay the bank ten percent of that amount ($100) in installments over the course of a three-year plan. And say the plan was confirmed by the bankruptcy court. The debtor's obligation at that point is merely to pay the bank a total of $100 over three years, with the caveat that if she fails to make payments to the trustee as scheduled, she will again owe the bank $1,000 outright.

These two types of obligations are quite different. If a company were considering making a new loan to this hypothetical debtor, it presumably would want to know whether the debtor's existing obligation is to pay $1,000 outright or to pay $100 with the threat of having to pay $1,000 if plan requirements aren't satisfied. And the pur-

**2.** As discussed in note 1, if a Chapter 13 debtor makes some payments under her plan or cures a default before becoming delinquent on her plan payments, the bankruptcy court continues to recognize the payments and cured default even after conversion. *See* 11 U.S.C. § 348.

pose of the Fair Credit Reporting Act is to ensure that the potential lender will have that kind of information. The statute helps ensure that the banking industry has the information it needs to properly conduct its affairs, and that borrowers are not denied credit based on inaccurate information in their credit reports. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Indeed, the Chapter 13 confirmation does not merely change the debtor's obligation as a common sense matter. It also changes the legal status of the obligation. 11 U.S.C. § 1322(b)(2) ("[T]he plan may ... modify the rights of holders of secured claims,... or of holders of unsecured claims ...."); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (describing the due process owed to creditors before a plan is confirmed). The Chapter 13 confirmation is a binding order of the bankruptcy court. 11 U.S.C. § 1327(a); *Bullard v. Blue Hills Bank*, — U.S. —, 135 S.Ct. 1686, 1692, 191 L.Ed.2d 621 (2015). If the debtor makes payments to the trustee according to the plan, the creditors covered by the plan have no recourse for the remaining debt. 11 U.S.C. § 1327(c). This is true even if the plan calls for them to receive a mere ten percent of the pre-confirmation debt—or zero percent, for that matter. *Id.* § 1327(a)-(c); *see, e.g., In re Metz*, 820 F.2d 1495, 1498 (9th Cir. 1987). There remains a possibility that the debtor will have to pay the pre-confirmation amount if the debtor fails to complete her plan payments on time, but the legal relationship between the debtor and creditor (not to mention legal status of the debt) has changed. *See In re Luedtke*, No. 02-35082, 2008 WL 2952530, at *4 (Bankr. E.D. Wis. July 31, 2008) (explaining that it is "not accurate" for a creditor to report the original balance of a debt once a confirmed plan reduced the amount

of repayment to which the creditor was entitled).

Furthermore, it's plausible that even in situations where a Chapter 13 plan requires a debtor to pay the entire amount previously owed to a creditor, the nature of the debt has materially changed from its pre-confirmation status. As mentioned, when a debtor files for bankruptcy, often she owes "past due" balances to many of her creditors. Before the filing, those creditors can go after the debtor to collect the past due amounts. But the Chapter 13 process adjusts the debt so that there is no longer anything "past due"—there is merely an obligation to pay the trustee going forward. A prospective lender may well want to be informed of the difference between these two types of debts.

This is presumably why the Consumer Data Industry Association (of which Equifax is apparently a member, along with the other national credit reporting agencies) has published guidance which instructs credit reporting agencies to change the way they report debts once those debts have been folded into a Chapter 13 confirmation. The guidance, according to the allegations in the complaint, instructs that reporting of debts should be changed following confirmation so that: (i) the "consumer information indicator" field in the credit reporting system specifies that the debtor is in Chapter 13 bankruptcy; (ii) the balance due for the debt is reported as the post-confirmation amount; (iii) the monthly payment amount is reported as the post-confirmation monthly payments; (iv) if the plan does not call for any payments to be made on a debt, a zero balance is reported; and (v) "past due" balances are reported at zero. The plaintiffs allege that Equifax failed to make those changes despite receiving notice of them.

Equifax protests that this guidance is not legally binding, and that the failure to follow it therefore cannot, on its own, be a violation of the statute. That may be true, but it doesn't make the guidance irrelevant. The fact that the Consumer Data Industry Association instructs agencies to change the way they report debts after they become part of a Chapter 13 confirmation supports the plaintiffs' allegation that plan confirmation changes the nature of the debt in a material way—and therefore in a way that must be reported to avoid violating the Fair Credit Reporting Act. Cf. Nissou–Rabban v. Capital One Bank (USA), N.A., No. 15-cv-01657-JLS, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016). The guidance also undermines Equifax's argument that it is "not capable" of interpreting the "legal effect" of a confirmation order on any given debt. Cf. Carvalho, 629 F.3d at 891–92. As the guidance suggests, when it comes to reporting on debts governed by a confirmed plan, there is nothing left for the agency to decide— the bankruptcy court has resolved the legal disputes, the confirmed plan constitutes the final word on those disputes, and for reporting purposes, the terms of the plan control.

At the hearing on the motions to dismiss, defense counsel argued that if credit reporting agencies followed the Consumer Data Industry Association's guidance, their reports would still be inaccurate because disclosing only the lesser amount owed might leave a potential lender guessing about how much the debtor would end up owing if she failed to complete the Chapter 13 plan. That may also be true, but it does not make it accurate to continue to report the debt as if it never was changed by a Chapter 13 confirmation. To make the report accurate, agencies would need to describe the debt in a way that communicates the new status of the debt. The possibility of a defect in the plaintiffs' proposal for how to accomplish that goal (based on the industry guidance) doesn't mean the defendants are not violating the Fair Credit Reporting Act. Perhaps the statute requires the credit reporting agencies to figure out how to describe the debt in a way that reflects, say, both the $1,000 pre-confirmation figure and the $100 post-confirmation figure.[3]

At least eleven judges of this district have granted motions to dismiss in similar cases. Chavez v. Experian Info. Sols., Inc., No. 16-cv-04622-BLF, 2017 WL 1479234 (N.D. Cal. Apr. 25, 2017); Mensah v. Experian Info. Sols., Inc., No. 16-cv-05689-WHO, 2017 WL 1246892 (N.D. Cal. Apr. 5, 2017); Reckelhoff v. Experian Info. Sols., Inc., No. 16-cv-06378-SBA, 2017 WL 1208398 (N.D. Cal. Mar. 31, 2017); Fair v. Experian Info. Sols., Inc., No. 16–cv-05712–CW, 2017 WL 1164225 (N.D. Cal. Mar. 29, 2017); In re Experian Info. Sols. Credit Reporting Litig., No. 16–cv–05674–WHA (N.D. Cal. Mar. 28, 2017); Coulbertson v. Experian Info. Sols., Inc., No. 16–cv–05672–RS (N.D. Cal. Mar. 24, 2017);

**3.** As mentioned in Section II, this ruling relates only to the motions to dismiss brought by Equifax, a credit reporting agency. Although creditors (or "data furnishers") were also named as defendants in the six cases originally scheduled for hearing, those creditors have settled. Much of the analysis in this ruling likely applies to data furnishers, who are responsible for providing accurate information to credit reporting agencies. 15 U.S.C. § 1681s–2(a). Data furnishers in some of these cases argue that the data input system created by the credit reporting agencies to facilitate the reporting of consumer information does not, as a practical matter, allow the furnishers to report both the pre-confirmation and post-confirmation status of a debt. This argument seems more appropriate for summary judgment, as opposed to these motions to dismiss. But, in any event, the issue is no longer presented here.

*Mamisay v. Experian Info. Sols., Inc.*, No. 16–cv–05684–YGR, 2017 WL 1065170 (N.D. Cal. Mar. 21, 2017); *Olsen v. Experian Info. Sols., Inc.*, No. 16–cv–05707–PJH, 2017 WL 1046962 (N.D. Cal. Mar. 20, 2017); *Artus v. Experian Info. Sols., Inc.*, No. 16-cv-03322-EJD, 2017 WL 346022 (N.D. Cal. Jan. 24, 2017); *Doster v. Experian Info. Sols., Inc.*, No. 16-cv-04629-LHK, 2017 WL 264401 (N.D. Cal. Jan. 20, 2017); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-cv-03645-EMC, 2016 WL 631980 (N.D. Cal. Feb. 17, 2016). To the extent those rulings would require dismissal of the complaints against Equifax in these three cases, the Court declines to follow them for the reasons stated above.

## IV.

██ Equifax makes another fleeting argument in support of its motions to dismiss: that the plaintiffs have failed to adequately plead that the alleged violations of the statute are willful. Perhaps because the argument is so cursory (and so secondary to the argument that credit reporting agencies need not report debts differently following a Chapter 13 confirmation), the plaintiffs have neglected to respond to it at all.

With respect to these particular motions to dismiss, whether the plaintiffs have adequately pled willfulness is outcome-determinative. That's because a plaintiff may only recover statutory damages for a willful violation of the statute. 15 U.S.C. § 1681n; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). While a plaintiff may recover actual damages in cases where the violation is not willful, 15 U.S.C. § 1681o, the plaintiffs in these cases have not alleged that they incurred any actual damages from Equifax's refusal to change the way it reported their post-confirmation debts. Therefore, unless the plaintiffs

properly allege willful violations, their complaints must be dismissed.

Although the plaintiffs intone, in an early paragraph in their complaints, that the violations were willful, they don't explain the basis for that allegation. Accordingly, the complaints must be dismissed. *See, e.g., Thompson v. Bank of America, N.A.*, No. 14-cv-03603-EDL, 2015 WL 355707, at *2 (N.D. Cal. Jan. 27, 2015) (explaining that merely alleging willfulness without explaining it is not enough). Dismissal is with leave to amend. Although Equifax may have an argument that a willfulness finding is foreclosed by the rulings of the other judges of this court, the plaintiffs deserve an opportunity to take their best shot at alleging facts that would support such a finding (or at alleging facts supporting actual damages). Any amended complaints are due within 28 days of the filing of this Order.

**IT IS SO ORDERED.**